**TAMASHA TOWN AND COUNTRY CLUB, a California corporation, Plaintiff,**

v.

**McALESTER CONSTRUCTION FINANCE CORPORATION, a Delaware corporation, Construction Finance Corporation, a California corporation, et al., Defendants.**

Civ. A. No. 65–760.

United States District Court
S. D. California,
Central Division.

March 8, 1966.

Hamilton & Mueller, Richard D. Hamilton, Santa Ana, Cal., for plaintiff.

Paul, Hastings, Janofsky & Walker, Los Angeles, Cal., for defendants.

IRVING HILL, District Judge.

Plaintiff corporation sues as a debtor in possession under Chapter XI of the Bankruptcy Act. Its Complaint seeks treble damages under California Civil

Code, § 1916–3, for payment of alleged usurious interest. There is no diversity. The Complaint cites, as the jurisdictional basis of the action, sections of the Bankruptcy Act involving both summary and plenary jurisdiction.* For the reasons stated below, the motion must be granted.

In order to understand the jurisdictional issues, it is necessary to state in some detail the history and background of the action, all of which appears from the documents and transcripts submitted to the Court in connection with the instant motion. None of the facts are disputed.

The unhappy relationship between Plaintiff and Defendant commenced on July 22, 1961, when they signed an agreement whereby Plaintiff was to obtain a construction loan from Defendant. The note was secured by real estate of Plaintiff. It was guaranteed by certain individual guarantors and additionally secured by other real estate belonging to them. Within a few days after the loan agreement was signed, Plaintiff filed a declaratory judgment action in the Superior Court of San Diego County seeking a determination that the transaction was not usurious. After trial of that action, judgment was rendered on August 8, 1961, declaring the transaction to be non-usurious and payments under the loan agreement were made.

About a year later, on July 31, 1962, Plaintiff filed a Chapter XI proceeding in Bankruptcy in this District. On August 6, 1962, upon application of Plaintiff, the Referee issued an Order to Show Cause temporarily enjoining Defendant from foreclosing on any of Plaintiff's property. On the date set for hearing, Defendant appeared in opposition and asked that the restraining order be dissolved. By an Order of September 26, 1962, the Referee denied the request for dissolution of the restraining order. A petition for review of the Referee's Order was filed on October 3, 1962. The petition for review was denied by minute order dated December 27, 1962. An appeal was noted to the Court of Appeals for the Ninth Circuit.

On August 14, 1962, while Plaintiff's Order to Show Cause of August 6, 1962, was pending before the Referee, Defendant McAlester began an action in the Superior Court of Orange County against the guarantors of the note. It sought foreclosure of the property of the guarantors which had been pledged as additional security. Almost two years later, on April 30, 1964, McAlester secured a judgment against the guarantors in the Orange County action.

On May 20, 1963, while the Orange County action was pending against the guarantors, Defendant McAlester filed an Order to Show Cause before the Referee in Plaintiff's bankruptcy proceeding. In it, Defendant again sought to vacate the injunction which prevented it from foreclosing on Plaintiff's real property. Defendant's Order to Show Cause also sought a ruling that Plaintiff be adjudicated a bankrupt, authority to reclaim certain chattels, and an order requiring Plaintiff to post a bond and furnish an audit. This Order to Show Cause of May 20, 1963, should be especially borne in mind. It is alleged to be the basis of jurisdiction in this case.

At about the same time, Defendant McAlester dropped its appeal from the Referee's Order of September 26, 1962, and the Order of the District Court dismissing the petition for review. In lieu of this appeal, McAlester apparently desired to make a frontal attack on the

---

* This Opinion throughout will refer to "the Defendant", meaning McAlester Construction Finance Corporation. Another corporation (which is a subsidiary of, or affiliated with, McAlester) and some individuals (who are officers or agents of the corporations) are named as co-defendants. Their liability, if any, is derivative from McAlester. Thus, if the action must be dismissed as to McAlester, it must also be dismissed as to the others. They have also joined in the Motion to Dismiss.

Referee's restraining order by its Order to Show Cause of May 20, 1963.

At this point Plaintiff filed, on June 4, 1963, a document which it called a "Supplement" to its original application for an Order to Show Cause of August 6, 1962. Plaintiff's "Supplement" is in no sense an answer to Defendant's Order to Show Cause of May 20, 1963. The "Supplement" sought to continue in effect the injunction stemming from the Plaintiff's Order to Show Cause of August 6, 1962, until the Referee determined a claim of usury raised by Plaintiff and the amount payable by Plaintiff to Defendant.

A hearing was held before the Referee on June 7, 1963. An examination of the transcript of that hearing makes it plain first, that all parties and the Referee were proceeding on the original application of Plaintiff Tamasha as "supplemented", and on the issues framed therein; and second, that the matters raised by Defendant McAlester in its Order to Show Cause of May 20, 1963, were not heard or determined.

Following the hearing of June 7, 1963, the Referee filed a Memorandum Opinion on July 12, 1963, and a formal Order filed November 13, 1963. That Order recites that evidence was heard on the "Supplement to Application to Stay Enforcement of Lien" of Plaintiff. In it, the Referee fixed the amount owing by Plaintiff to Defendant (as requested by Plaintiff in its "Supplement") and ruled that Defendant McAlester could not foreclose on Plaintiff's property until some $31,000 additional principal was paid by it to Plaintiff. He also ruled that the original loan was usurious. He refused to be bound by the judgment in the San Diego County declaratory relief action, finding that it was collusive. The Referee determined that summary jurisdiction existed to try the usury issue.

After the June 1963 hearing on Plaintiff's Supplementary application, a hearing was brought on by the Referee's own motion on November 3, 1963, and the Referee on November 27, 1963, filed an Order continuing the debtor in possession, and reciting that Defendant McAlester's application "for adjudication of the debtor and other relief" in its Order to Show Cause of May 20, 1963, was denied.

McAlester on December 4, 1963, filed a petition for review of the Referee's earlier Order of November 13, 1963, stating *inter alia* that the Referee erred in concluding that he had summary jurisdiction, since McAlester had raised a timely objection thereto, and asserting that a plenary suit was required to try the issue of usury. On December 12, 1963, McAlester filed another petition for review of the Referee's later Order of November 27, 1963, continuing the debtor in possession. Both petitions for review were pending when the judgment against the guarantors on the note was rendered in the afore-mentioned Orange County Superior Court action on April 30, 1964. Both were still pending when the said judgment was satisfied by a written agreement of May 20, 1964.

On June 4, 1964, Judge Stephens entered an Order dismissing both said petitions for review on the stipulation of the parties, acting jointly, that the petitions for review and the Orders of the Referee involved in them, should be vacated as moot.

The instant action was filed May 20, 1965. In the Complaint, Plaintiff contends that *it* paid the funds used in satisfaction of the judgment against the guarantors and that its payment included payments of usurious interest, for which it now seeks treble damages.

There is also pending a standby State Court action in which the present issues can be determined if no federal jurisdiction is found.

An analysis of the jurisdictional problems here presented requires a definition and discussion of both summary and plenary jurisdiction as applied to bankruptcy matters, since both types of jurisdiction are claimed.

██ All bankruptcy jurisdiction is statutory. The term "summary jurisdiction" refers to jurisdiction specifically granted in the Bankruptcy Act[1] which a bankruptcy court (acting almost invariably through the Referee in Bankruptcy) exercises by "summary" proceedings. These proceedings are based on the use of petitions and orders to show cause, rather than formal pleadings.[2]

██ Summary jurisdiction includes three different categories: (1) "proceedings in bankruptcy"; (2) "controversies arising in proceedings in bankruptcy"; and (3) "other controversies between the bankrupt and a third party" not falling within (1) or (2) *supra*, but to which there is *consent* to summary jurisdiction. (2 Collier *On Bankruptcy* ¶ 23.02, p. 438, *et seq.*) Category (1) above, "proceedings in bankruptcy", is a term of art referring to matters of the administration of the bankrupt's estate, including the allowance of claims and the reduction of the estate to money. There is no contention that this category is involved in the instant case. Category (2) above, "controversies arising in proceedings in bankrptcy", is likewise a term of art referring to disputes concerning the property of the bankrupt in the actual or constructive possession of the Court. Category (3) above, "consent", involves situations where a party, by his own acts, is deemed to consent to the summary procedures of the Bankruptcy Court, waiving his right to the action being tried in an independent plenary suit in a court of appropriate jurisdiction. Such consent may be express, implied in law from a failure to assert an objection to summary jurisdiction,[3] or implied in fact from the acts of the party alleged to have consented.[4]

In the instant case, Plaintiff claims that summary jurisdiction exists under Category (2) above, or by consent under Category (3), or both. As will be discussed *infra*, neither claim is well founded.

██ The term "plenary jurisdiction" refers to actions instituted in the District Court as contrasted with those instituted before the Referee in Bankruptcy. Plenary proceedings involve all of the normal attributes of court trial, including formal pleadings, cross-examination of witnesses and the right to jury trial.

The statute governing plenary jurisdiction is § 23(b) of the Bankruptcy Act, 11 U.S.C. § 46(b). That section specifically authorizes the filing of a narrow group of actions arising from bankruptcies in the District Court as plenary actions in bankruptcy, even though no diversity or other independent basis of federal jurisdiction exists. This narrow group consists of cases arising under §§ 60, 67 and 70 of the Bankruptcy Act relating to preference, avoidable liens and fraudulent transfers. Other cases, even though a receiver, trustee or debtor in possession is a party, may not be instituted in the Federal District Court in

---

1. Since the instant case involves a Chapter XI proceeding, the jurisdictional section is § 311 of the Bankruptcy Act (11 U.S.C. § 711). In ordinary adjudicated bankruptcies, the jurisdictional section is § 2 of the Bankruptcy Act (11 U.S.C. § 11). On the summary jurisdiction problem, the parties have cited, and I cite herein, § 2 cases as equally applicable in the instant case. Though summary jurisdiction in Chapter XI may be somewhat broader than summary jurisdiction under § 2 (8 Collier On Bankruptcy ¶ 3.02, p. 176) the differences will not affect the present problem and the § 2 cases appear to be relevant authority here.

2. Sometimes unsubstantial matters within summary jurisdiction are disposed of *ex parte* or on affidavits only with both sides present. But where the proceeding is substantial and of an adversary nature, issues must be framed and trial must be by examination and cross-examination of witnesses. In re Sugerman, Inc., 3 F.2d 436 (2nd Cir. 1924). In such matters the term "summary" is indeed a misnomer. See Editorial, "What's In A Name—The Unhappy Tag of Summary Jurisdiction", 39 Referees' Journal 67 (1965).

3. See Bankruptcy Act § 2(a) (7), 11 U.S. C. § 11(a) (7).

4. See 2 Collier, supra, ¶ 23.08(1), et seq.

the absence of an independent basis of federal jurisdiction, such as diversity, with one exception namely, "consent". As that term is used in § 23(b), such "consent" may be express or implied.

In the instant case, Plaintiff argues that, even if there is no summary jurisdiction, there is plenary jurisdiction based on consent. This contention also, as will be demonstrated *infra,* is without merit.

Plaintiff instituted this case by filing a complaint in the usual form directly in the District Court. That, coupled with a reading of the complaint, would impel one to the conclusion that a plenary action only was intended. However, since the complaint invokes both the summary jurisdiction sections of the Bankruptcy Act, and the section on plenary jurisdiction, on a motion to dismiss I must consider whether a basis for either summary or plenary jurisdiction exists.

### Summary Jurisdiction

Plaintiff first contends that the action is cognizable because it involves a claim to property in the actual or constructive possession of the Court (Category (2) of summary jurisdiction, *supra*). Plaintiff argues that it is seeking to recover a "fund", i. e. the money it allegedly paid by way of interest. Plaintiff contends that this "fund" was the proceeds of its real estate which was in its possession at the time of filing the Chapter XI proceeding and thus was in the actual or constructive possession of the Court.

It is clear to me that Plaintiff's action is not one to *recover* anything, and that no "fund" exists which is sought to be recovered. This is a damage action to enforce a statutory penalty. The relief sought is akin to damages for tortious conduct. The action does not seek to recover any specific money or property in the hands of the Defendant.

It is well established that summary jurisdiction does not exist to enforce a chose in action against a debtor since such an action involves no property in the actual or constructive possession of the Bankruptcy Court.[5] It is likewise well settled that summary jurisdiction does not extend to actions where indemnification is sought rather than restitution.[6]

Plaintiff makes an alternative argument to justify summary jurisdiction, i. e., that even if no recovery of a "fund" is involved, there has been consent by Defendant (Category (3) above). Plaintiff does not argue, nor could it so argue, that Defendant has expressly consented to jurisdiction, or that it has consented by failure to object to jurisdiction. The record is clear that McAlester objected to the exercise of summary jurisdiction at the outset when Plaintiff first raised the issue of usury before the Referee in June, 1963, and has constantly objected to jurisdiction on that issue ever since. Plaintiff does claim that Defendant *impliedly* consented to summary jurisdiction by seeking in its Order to Show Cause of May 20, 1963, to have the Referee's earlier injunction against foreclosure on any of the Plaintiff's property dissolved, and by seeking the other relief sought therein. As will be remembered that order also asked authorization to reclaim certain of Plaintiff's chattels subject to a chattel mortgage, to have Plaintiff adjudicated a bankrupt, and to require Plaintiff to post a bond, to account and to appear for examination.

---

5. Kelley v. Gill, 245 U.S. 116, 38 S.Ct. 38, 62 L.Ed. 185 (1917); Matter of Roman, 23 F.2d 556 (2d Cir. 1928); In re Joslyn's Estate, 168 F.2d 803 (7th Cir. 1948); Matter of Rogers, 51 F.Supp. 930 (1942).

6. Maggio v. Zeitz, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948); See also, In re 671 Prospect Avenue Holding Corporation, 118 F.2d 453 (2d Cir. 1941), cert. denied Newfield v. East River Sav. Bank, 314 U.S. 642, 62 S.Ct. 83, 86 L.Ed. 515 (1941); In re Welded Construction, Inc., 339 F.2d 593 (6th Cir. 1964).

I hold that none of these requests for relief amount to an invocation of the aid of the bankruptcy court which by implication would open the door to the issue Plaintiff now seeks to raise.

There are cases which enunciate a doctrine of consent implied in fact to summary jurisdiction by one seeking affirmative relief from the bankruptcy court. Plaintiff cites a number of them.[7]

All of these are cases in which the claimant filed a claim against the bankrupt which, if allowed, would result in the payment of money or the recovery of property from the estate. When that has occurred, these cases hold that the bankrupt may obtain affirmative relief against the claimant on a counterclaim. The claimant is held to have impliedly consented to a determination of the counterclaim by asserting his own claim.

 The doctrine of consent implied in fact stems from no statutory language, but arises from general equitable considerations. Alexander v. Hillman, 296 U.S. 222, 56 S.Ct. 204, 80 L.Ed. 192 (1935) is often cited as the leading case on the subject of implied consent as discussed herein.

I believe that this doctrine is not applicable, either in law or policy, to the present case for several reasons.

 In the first place, McAlester was asserting no claim of its own in the Bankruptcy Court. It was a secured creditor and there is no provision or requirement for the filing of claims by a secured creditor in Chapter XI proceedings. The purpose of such proceedings is to secure an arrangement of unsecured debts.

Secondly, McAlester's Order to Show Cause was, in my view, defensive in nature. Its request to have the injunction against foreclosure of the real estate dissolved, was surely defensive.

Plaintiff, by filing its petition and securing its preliminary injunction, had inhibited McAlester from following the normal state court remedies of foreclosure. McAlester's request for delivery of the chattels which were also secured to it by chattel mortgage, was similarly defensive. McAlester sought their delivery for the obvious purpose of being able to foreclose on them. McAlester had no other alternative but to come into the Bankruptcy Court for this relief. It made no claim in the Bankruptcy Court, but sought merely the right to take action against its security in another forum, at which time Plaintiff would be free to protect its property by asserting any available defenses and counterclaims.

Plaintiff cites no case where a secured creditor, appearing in a Chapter XI proceeding, is held to have impliedly consented to trial of a damage counterclaim merely by seeking to have a prior order of the Referee vacated. There is case law to the contrary. The posture of this case is analogous to that in Henkin v. United States, 229 F.2d 895 (2nd Cir. 1956). There, the United States, which held a lien on property, cross-moved to have a stay contained in a prior order of the Referee vacated, so that it might proceed to foreclose on its lien. The Court rejected the appellant's argument that the government's cross-motion constituted a submission to summary jurisdiction by implied consent so as to allow the Bankruptcy Court to adjudicate the validity of the lien. The Court held that the efforts of the United States "were directed toward the vacation of the stay * * * rather than toward the attainment of affirmative relief." The Court said:

"The [bankruptcy] court having intervened to prevent the scheduled sale by the government, the government had no alternative but to become a

7. In re Nathan, 98 F.Supp. 686 (S.D.Cal. 1951); Floro Realty & Investment Co. v. Steem Electric Corporation, 128 F.2d 338 (8th Cir. 1942); Florance v. Kresge, 93 F.2d 784 (4th Cir. 1938); Peters v. Lines, 275 F.2d 919 (9th Cir. 1960); affirming In re Snow Camp Logging Company, 168 F.Supp. 420 (N.D.Cal.1958); Inter-State National Bank of Kansas City v. Luther, 221 F.2d 382 (10th Cir. 1955).

party to the proceedings. Consent to summary jurisdiction is thus lacking * * *." (229 F.2d 895 [at p. 897]). Cf. Glens Falls Insurance Co. v. Strom, 198 F.Supp. 450, 457 (S.D.Cal.1961).

The other basis of relief which McAlester sought in its Order to Show Cause, i. e. the adjudication of Plaintiff as a bankrupt and the incidental request for a bond, accounting and examination, were equally defensive. The obvious purpose of these requests was to have the Chapter XI proceedings terminated so as to accomplish a termination of the restraints on Plaintiff's collection of its debt by foreclosure of its security. This is a far cry from filing a claim as was done in the cases cited by Plaintiff. To extend the implied consent doctrine to this type of a situation would unduly penalize secured creditors who come to the Bankruptcy Court in a defensive posture seeking only the right to realize on their security in the ordinary fashion.

■ Even if McAlester's participation in the proceedings before the Referee can be construed as implied consent to something, that consent did not extend to the claim now urged in this action. The cases recognize limitations to the doctrine of implied consent. Our Circuit imposes the requirement that the debtor must assert counterclaims arising out of the same transaction. Peters v. Lines, 275 F.2d 919 (9th Cir. 1960). The other Circuits apparently employ the same limitation.[8]

■ It is quite apparent that the subject of the instant action constitutes a different transaction than was involved in McAlester's Order to Show Cause of May 20, 1963. The present claim for treble damages for interest paid, did not arise and could not have arisen until May 20, 1964, when the alleged interest was actually paid. No case has been cited to the Court holding that implied consent extends to rights which did not even exist when the jurisdiction of the Bankruptcy Court was allegedly invoked by one claiming against the bankrupt.

In this respect, the instant case is much like In re 671 Prospect Avenue Holding Corp., cited supra. There a bank sought in the Bankruptcy Court to establish the validity of liens which it asserted against real estate and chattels in the possession of the bankrupt. As here, it was attempting to get into a position where it could foreclose on both. The District Court, on a petition for review, held both liens valid. The decision was affirmed by the Circuit Court and the Trustee in Bankruptcy turned the chattels over to the bank, which thereupon sold them. On re-argument, the Circuit Court reversed its prior decision, holding that the alleged lien on the chattels was invalid. The Trustee thus had a claim for conversion of the chattels against the bank and sought to have it tried before the Referee in summary proceedings. The Trustee claimed that the bank's earlier application to the Bankruptcy Court constituted implied consent. The Circuit Court held there was no summary jurisdiction of the conversion claim which had arisen months after the bank's original application for relief, stating:

"It is urged that the bank's consent to summary procedure may be found in the prior litigation concerning its lien, but the contention is unsound. Though the invalidity of the bank's lien has been established, the bank's liability to pay damages for injury to, or conversion of, the chattels has never been adjudicated; and the issue of liability presents a controversy which the bank is entitled to have tried out in a plenary suit, if it so wishes." 118 F.2d at p. 455.

---

8. See cases cited in Katchen v. Landy, 86 S.Ct. 467, 471, 382 U.S. 323, 15 L.Ed.2d 391 (1966). The Supreme Court has recently held that the same transaction requirement is not applicable where a preference is involved. Katchen v. Landy, supra. But there is no preference involved in the instant case.

There is still another reason for declining to apply the doctrine of implied consent on the facts here, i. e. that the proceedings on McAlester's Order to Show Cause had been terminated long before the instant claim arose. All of the purposes and policy behind the implied consent doctrine require that there be some type of a proceeding still pending in the Bankruptcy Court at the time the bankrupt's claim is asserted. Two policy considerations underlie the doctrine, (1) avoiding a multiplicity of litigation by obviating the need for contesting the same facts in two separate courts, and (2) permitting a casting of accounts between the bankrupt and the claimant.[9] When the claimant's original proceeding is over by the time the bankrupt's claim is asserted, neither of these purposes is served. As stated by Judge Learned Hand in Conway v. Union Bank of Switzerland, 204 F.2d 603 (2d Cir. 1953), the bankrupt's claim must be a counterclaim and "it does not matter whether the creditor's claim is valid; the only relevant inquiry is whether he is a claimant, when the counterclaim is filed." In *Conway*, supra, the Court held that implied consent ceased when the creditor's claims had been dismissed. (204 F.2d at pp. 607–608)

Similarly in the case at bar, all proceedings on McAlester's Order to Show Cause were terminated long ago.

They were terminated by the Referee's Order of November 13, 1963, and if not terminated by that Order, they were surely terminated by Judge Stephens' stipulated Order of June 4, 1964, vacating the Referee's Order of November 13, 1963, as moot. As in *Conway*, whatever consent there was had long since expired when the instant Complaint was filed.

### Plenary Jurisdiction

Finding no basis for summary jurisdiction, I pass now to the claim that plenary jurisdiction exists. Under § 23 (b) of the Bankruptcy Act, since there is no diversity in the instant case and since the instant case does not arise under §§ 60, 67 or 70 of the Bankruptcy Act, there is no right to proceed in the Federal Court unless "consent of the Defendant" is found. As above stated, there is no factual basis for claiming that McAlester either expressly consented to the jurisdiction of this Court or impliedly consented thereto by failure to object. Plaintiff makes no such claim. Plaintiff does claim that consent to plenary jurisdiction exists by virtue of the proceedings before the Referee which have been hereinbefore discussed in detail. Without citing any authority, Plaintiff assumes that the cases finding consent to summary jurisdiction by acts of the claimant are *ipso facto* applicable to plenary jurisdiction.

Although no discussion of the problem has been found, I am convinced that these cases are not applicable to a plenary proceeding initiated in the District Court. As above noted, the policy underlying the doctrine of consent to summary jurisdiction by acts of the claimant, is avoiding multiplicity of actions and permitting the casting of accounts between the parties. Neither of these would be advanced by extending the doctrine of consent by acts of the claimant to a plenary proceeding.

But even assuming *arguendo*, that the doctrine of implied consent by acts of the claimant did apply to a plenary action, for the reasons above stated I hold that the facts involved here do not establish such consent.

To summarize, there is no basis for the exercise of either summary or plenary jurisdiction in this case. There is no reason why this controversy should not be heard and determined in the standby state court action. An Order dismissing the action will be filed this date.

9. 4 Collier On Bankruptcy, ¶ 63.20[4], at pp. 808–809.