**In the Matter of OCEANA INTERNA-TIONAL, INC., Debtor.**
**No. 67-B-1113.**

United States District Court,
S. D. New York.
April 2, 1974.

Ballon, Stoll & Itzler, New York City, for debtor; Burton D. Stump, New York City, of counsel.

Whitman & Ransom, New York City, for respondent; William M. Kahn, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Oceana International, Inc. (Oceana), the debtor, seeks review of an order of the Referee in Bankruptcy which dismissed a proceeding previously instituted by petitioner against the Bank of Commerce on the ground that the Bankruptcy Court, upon the entry of its order confirming the debtor's Plan of Arrangement, was divested of summary jurisdiction to adjudicate the issues raised in the proceeding. Consideration of the issue requires reference to the facts which led to the order under review.

On December 22, 1967, Oceana filed a Petition for Arrangement under Chapter XI of the Bankruptcy Act,[1] whereupon an appropriate order was entered by the referee authorizing the debtor to continue in possession and to operate its business, and a further order was entered enjoining all parties from commencing or continuing suits against the debtor other than suits to enforce liens upon its property.[2] The Bank of Commerce (the Bank) then held three chattel mortgages on various assets of Oceana at its three locations. The Bank petitioned for leave to foreclose its chattel mortgages,[3] which was denied by the referee, it appearing that the mortgaged property had a value in excess of the outstanding loans, upon condition that the debtor pay accumulated interest and subsequent interest as it became due. On June 30, 1968, upon the debtor's failure to apply for confirmation of a Plan of Arrangement, it was adjudicated a bankrupt[4] and a trustee appointed who took possession of its assets subject to the Bank's mortgages. On August 3 the Bank again petitioned for and this time was granted leave to sell at public auction the chattels and personal property scheduled in the mortgages with any excess over and above the Bank's liens that might be realized upon the sale to be held subject to the further order of the court. The sale was conducted on August 29 and 30 and the Bank purchased the chattels for $100 in excess of the amount of its lien, then $213,728.76 plus interest. Thereafter, on September 26, the Bank sold the chattels which were the subject of its foreclosure sale to Cap-Roc, Inc. for $217,000.

On October 9, 1968, Oceana filed a second Petition for Arrangement under section 321 of the Bankruptcy Act,[5] following which on January 22, 1969, an order was entered revesting it with possession of all remaining undisposed assets of the bankrupt estate, including but not limited to "patents, dies and molds" and causes of action or claims with respect to their alleged unauthorized or illegal use. The same order en-

1. Bankruptcy Act § 322, 11 U.S.C. § 722 (1970).

2. Bankruptcy Act § 314, 11 U.S.C. § 714 (1970).

3. *See* Lockhart v. Garden City Bank & Trust Co., 116 F.2d 658, 660 (2d Cir. 1940).

4. Bankruptcy Act § 376(2), 11 U.S.C. § 776(2) (1970).

5. 11 U.S.C. § 721 (1970).

joined the trustee from further administration of the estate.[6] Oceana's second Petition for Arrangement was predicated essentially upon a claim that at the foreclosure sale the Bank acquired and then sold to Cap-Roc molds and dies related to patents which allegedly were not subject to the chattel mortgage, and that a recovery of such property could result in a Plan of Arrangement. Based thereon, Oceana, as debtor in possession, on March 14, 1969, commenced a summary proceeding against the Bank and Cap-Roc and sought an order declaring the sale null and void and other relief incidental thereto.

The petition alleged four causes of action: one charged that the Bank stifled bidding, froze out competitive bidding and conspired in various respects with Cap-Roc to defraud the court, the creditors of the estate and the debtor and thereby illegally acquired possession of the dies and molds which the debtor contended were not subject to the mortgage; another charged the Bank was "guilty of overreaching and unconscionable conduct with respect to the dies and molds"; and another charged Cap-Roc with "violation and infringement of the patents owned by Oceana." These claims, even if cloaked with the label of a turnover proceeding or one to determine whether the Bank violated the referee's order authorizing the sale, on their face, raised substantial questions as to the bankruptcy court's summary jurisdiction. Both the Bank and Cap-Roc asserted as an affirmative defense lack of jurisdiction. In any event, in apparent recognition of the problem, Oceana, on May 1, 1969, withdrew its proceeding against both Cap-Roc and the Bank.

This was followed up by a new proceeding filed on May 7, 1969 solely against the Bank to void the sale. The petition in substantial measure tracked allegations of the prior petition, including the charge that the Bank conspired with Cap-Roc; that it fraudulently obtained and illegally acquired possession of the dies and molds belonging to the debtor's estate which it sold to Cap-Roc. The Bank denied these charges and again advanced as an affirmative defense that the bankruptcy court was without jurisdiction to determine the issues in a summary proceeding. Oceana moved before the referee for summary judgment against the Bank upon its claims, but the motion was denied by the referee in July 1969. Cap-Roc, claiming an interest in the property which was the subject matter of the proceeding, moved to intervene to protect its rights, as well as to defend against the conspiracy and fraud charges, but the referee denied its motion; however, upon review, the order was reversed by the District Court on December 3, 1970, and Cap-Roc was permitted to intervene pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure.

On May 19, 1971, the debtor's Plan of Arrangement, as amended several times, was confirmed and an order entered to that effect. Under its terms all general unsecured creditors were paid ten percent. Although the plan as proposed by the debtor did not so provide, the referee's order of confirmation contained a provision that "[t]his court retain jurisdiction of the proceeding presently pending before it brought on by the debtor herein against the Bank of Commerce, in which Cap-Roc, Inc. has intervened pursuant to orders of the Court to finally determine the issue raised by the pleadings."[7]

On January 17, 1972, pursuant to an agreement approved by the referee, all

---

6. Bankruptcy Act § 332, 11 U.S.C. § 732 (1970), provides that where " . . . a trustee in bankruptcy has previously been appointed, [he] shall continue . . . in possession." The record affords no explanation as to why he was enjoined. *Cf.* 8 Collier on Bankruptcy, ¶ 5.09 [10] at 606–07 (14th ed. 1971).

7. The record does not indicate how it came about that this clause was inserted in the order, since the plan as proposed by the debtor did not contain or request it; nor is it clear why the Bank, which in its answer asserted as a defense that the bankruptcy court was without jurisdiction, did not then question it.

disputes between the debtor and Cap-Roc were compromised, whereby the debtor received from Cap-Roc a cash sum and the return of some of the molds acquired by Cap-Roc from the Bank, and Cap-Roc received a royalty free non-exclusive license to use the patents owned by the debtor. The settlement also provided for the termination of the proceeding against Cap-Roc so that the Bank remained as the sole respondent in the proceeding. Oceana, after the denial of its motion for summary judgment in July 1969, took no other step to prosecute its alleged claims against the Bank.

Subsequently, the Bank, on November 1, 1972, moved to dismiss the proceeding still pending against it on the ground that the bankruptcy court no longer had jurisdiction; it also moved to delete the last "ORDERED" paragraph of the confirmation order referred to above. Its basic contention was that upon the entry of the order of confirmation the court lost jurisdiction and was without power to adjudicate the controversy between the Bank and the debtor. The referee granted the Bank's motion based upon section 367(4) of the Bankruptcy Act,[8] which provides that "upon confirmation of an arrangement . . . except as otherwise provided in sections 769 and 770 of this Act, the case shall be dismissed." Section 369 [9] provides for the retention of jurisdiction to allow or disallow claims affected by the arrangement, and section 370 [10] provides for retention of jurisdiction over the distribution of the consideration deposited for

payment of the allowed claims. The referee held that the case did not come within either of those sections to justify retention of jurisdiction; he further held that since the arrangement proposed by Oceana did not provide for retention of jurisdiction, it was not retained under section 368,[11] notwithstanding that his order did include such a provision. Moreover, he held even if the debtor's plan had contained such a proposal, it would not have afforded a basis of jurisdiction of the controversy between the debtor and the Bank, since section 368 confers jurisdiction only of the limited powers specified in section 344 [12] and section 377,[13] which respectively relate to the court's power (1) to authorize the issuance of certificates of indebtedness after confirmation, and (2) to take action in instances where the debtor defaults in any of the terms of the arrangement or where the arrangement terminates by reason of the happening of a condition specified in the arrangement.[14]

The referee's position that jurisdiction did not survive confirmation of the plan under any of the foregoing referred-to sections is unassailable [15] —indeed the debtor appears to concede as much, but contends nonetheless that jurisdiction was retained and continued upon an entirely different theory.

The debtor acknowledges that its proceeding against the Bank was plenary, normally involving all the attributes of a court trial.[16] However, it contends that

---

8. 11 U.S.C. § 767(4) (1970).

9. 11 U.S.C. § 769 (1970): "The court shall in any event retain jurisdiction until the final allowance or disallowance of all claims affected by the arrangement which have been filed within the limitations as to time and amount prescribed by section 755a of this title but have not been allowed or disallowed prior to confirmation."

10. 11 U.S.C. § 770 (1970): "Upon the allowance of any debts specified in paragraphs (1), (2), and (3) of section 769 of this title, the consideration, if any, deposited for them shall be distributed and the rights

provided by the arrangement shall inure to the creditors to whom such debts are owing."

11. 11 U.S.C. § 768 (1970).

12. 11 U.S.C. § 744 (1970).

13. 11 U.S.C. § 777 (1970).

14. 9 Collier on Bankruptcy ¶ 9.29 [2] at 369–70 (14th ed. 1971).

15. *See* 9 Collier on Bankruptcy ¶ 9.28 (14th ed. 1971).

16. *See* Tamasha Town & Country Club v. McAlester Const. Fin. Corp., 252 F.Supp. 80, 85 (S.D.Cal.1966), for a comprehensive

the "bankruptcy court obtained summary jurisdiction of what would otherwise have been a plenary action not by virtue of Chapter XI, but pursuant to section 23 of the Bankruptcy Act."[17] It also relies upon section 2a(7) to support its jurisdictional claim. Thus it argues that the bankruptcy court having acquired jurisdiction under those sections, it did not lose it when the Chapter XI case was dismissed upon confirmation of the arrangement despite the mandate of section 367(4) of the Act because that section pertains only to controversies concerning an arrangement, whereas the proceeding against the Bank was "an independent litigation" not related to the arrangement and "not governed by the provisions of Chapter XI."[18]

The debtor's claim of continued jurisdiction under either section cannot be upheld. Section 23(b), in specified instances (of which this is not one) and where a defendant consents, grants limited plenary jurisdiction to a bankruptcy court even though no diversity or other independent basis of federal jurisdiction exists.[19] When a defendant consents under section 23, this operates to confer jurisdiction over a plenary suit in a bankruptcy court with power in the referee to decide the issues presented in a summary trial.[20] The debtor contends that the Bank impliedly consented to such summary jurisdiction when it ap-

plied for and obtained leave to foreclose its chattel mortgages and that once having thus consented the jurisdiction continued until the disputed issues raised by its subsequent proceeding with respect to the dies and molds were disposed of.

The theory that the Bank consented to the court's summary jurisdiction is without substance. Here the Bank did not give its affirmative consent; to the contrary, it expressly challenged the bankruptcy court's jurisdiction to determine the issues raised in summary proceeding.[21] The referee never passed upon this defense although he ordered dismissal of the proceeding on the grounds noted above. Upon filing of the Petition for Arrangement, the debtor was in possession of all property mentioned in the mortgage. The court had power to stay enforcement of the Bank's lien to protect the debtor's estate as to any possible equity over and above the secured debt for the benefit of creditors during the existence of the arrangement proceeding. The Bank perforce was compelled to apply to the bankruptcy court for permission to foreclose its lien,[22] the validity of which was not then challenged. Since its action was only defensive and it sought no affirmative relief, the Bank cannot be deemed to have consented to summary jurisdic-

---

discussion of "summary" and "plenary" jurisdiction.

17. Debtor's brief p. 7.

18. Debtor's brief p. 2.

19. Schumacher v. Beeler, 293 U.S. 367, 55 S.Ct. 230, 79 L.Ed. 433 (1934); Tenenbaum v. Walter E. Heller & Co., 308 F.Supp. 1085 (S.D.N.Y.1970). *See also* Williams v. Austrian, 331 U.S. 642, 652–654, 664, 67 S. Ct. 1443, 91 L.Ed. 1718 (1947).

Section 23(b), 11 U.S.C. § 46(b) (1970), provides:

"Suits by the receiver and the trustee shall be brought or prosecuted only in the courts where the bankrupt might have brought or prosecuted them if proceedings under this title had not been instituted, unless by consent of the defendant, except as provided in sections 96, 107, and 110 of this title."

A debtor in possession is a "trustee" within the meaning of section 23, *see* notes 29–32 *infra;* 8 Collier on Bankruptcy ¶ 6.32 at 971 (14th ed. 1971).

20. MacDonald v. Plymouth Trust Co., 286 U.S. 263, 267–268, 52 S.Ct. 505, 76 L.Ed. 1093 (1932); Page v. Arkansas Gas Corp., 286 U.S. 269, 52 S.Ct. 507, 76 L.Ed. 1096 (1932); In re Pinsky-Lapin & Co., 98 F.2d 776, 777 (2d Cir. 1938).

21. *See* Bankruptcy Act § 2a(7), 11 U.S.C. § 11a(7) (1970).

22. Lockhart v. Garden City Bank & Trust Co., 116 F.2d 658, 660 (2d Cir. 1940).

tion.[23] Any theory of consent is negated by the Bank's resistance to jurisdiction over the proceeding wherein it advanced the affirmative defense of lack of jurisdiction.

■ Alternatively, the defendant argues that since it was in possession of the molds and dies when the petition for arrangement was filed, the bankruptcy court acquired jurisdiction by virtue of section 2a(7), which confers summary jurisdiction over disputes of property in the actual or constructive possession of the court.[24] However, accepting that jurisdiction was acquired by virtue of that section, it was lost on May 17, 1971 when the arrangement was confirmed.

■ Even when property in dispute is in the court's possession, or the as-verse party consents to jurisdiction, neither section 2a(7) nor section 23(b) grants jurisdiction over "independent litigations" that are unrelated to the purpose of the particular Bankruptcy Act proceeding.[25] Thus section 2a(7) confers summary and plenary jurisdiction [26] upon the bankruptcy court for the express purpose of causing "the estates of bankrupts," including Chapter XI debtors,[27] "to be collected . . . and distributed." The court is empowered under that section to "determine controversies in relation thereto, except as herein otherwise provided." The "exception" referred to is section 23, which is a limitation on the plenary jurisdiction conferred by section 2a(7); [28] consequently the jurisdiction conferred under section 23 is no greater than that conferred under section 2a(7) to "cause the estates of bankrupts to be collected . . . and distributed."

When the debtor commenced this proceeding against the Bank it was for the express purpose of recovering assets for the benefit of the bankrupt estate, and in order to effectuate an arrangement with its unsecured creditors. It was not an "independent litigation not related to the arrangement," as the debtor now argues; to the contrary, the contemplated recovery was linked to a proposed arrangement, as the debtor stated in its petition upon which it was revested with possession of the estate. Thereupon the

23. Henkin v. United States, 229 F.2d 895, 897 (2d Cir. 1956); Tamasha Town & Country Club v. McAlester Const. Fin. Corp., 252 F.Supp. 80, 87 (S.D.Cal.1966). See generally 2 Collier on Bankruptcy ¶ 23.08(5) (14th ed. 1971).

24. 11 U.S.C. § 11a(7) (1970), Katchen v. Landy, 382 U.S. 323, 327, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 481, 60 S.Ct. 628, 84 L.Ed. 876 (1940); Taubel-Scott-Kitzmiller Co. v. Fox, 264 U.S. 426, 432–433, 44 S.Ct. 396, 68 L.Ed. 770 (1924); White v. Schloerb, 178 U.S. 542, 548, 20 S.Ct. 1007, 44 L.Ed. 1183 (1900). See In re Livingston, 93 F.Supp. 173 (N.D.Cal.1950). See also Bankruptcy Act § 311, 11 U.S.C. § 711 (1970).

25. E. g., In re H. R. Weissberg Corp., 458 F.2d 975, 977 (7th Cir. 1972); In re Richmond, 456 F.2d 458, 463 (3d Cir. 1972); Baker & Taylor Drilling Co. v. Stafford, 369 F.2d 551, 556 (9th Cir. 1967); Kaplan v. Guttman, 217 F.2d 481, 484 (9th Cir. 1954); Evarts v. Eloy Gin Corp., 204 F.2d 712, 717

(9th Cir.), cert. denied, 346 U.S. 876, 74 S. Ct. 129, 98 L.Ed. 384 (1953); Central Hanover Bank & Trust Co. v. Kelby, 133 F.2d 873, 875 (2d Cir. 1943); 1 Collier on Bankruptcy ¶ 2.09 at 178 (14th ed. 1971).

26. Williams v. Austrian, 331 U.S. 642, 646–654, 660, 67 S.Ct. 1443, 91 L.Ed. 1718 (1947); 2 Collier on Bankruptcy ¶ 23.13 at 589–91 (14th ed.1971); cf. J. MacLachlin, Bankruptcy § 219 at 247–48 (1956).

27. Bankruptcy Act § 302, 11 U.S.C. § 702 (1970).

28. Williams v. Austrian, 331 U.S. 642, 649, 67 S.Ct. 1443, 91 L.Ed. 1718 (1947).

Section 23(a) limits the plenary jurisdiction to suits in which the ordinary requisites of federal jurisdiction are present. However, section 23(b) excepts from this limitation suits in which the defendant consents to federal jurisdiction and suits brought under §§ 60, 67, or 70 of the Act. Schumacher v. Beeler, 293 U.S. 367, 374, 55 S.Ct. 230, 79 L.Ed. 433 (1934); 2 Collier on Bankruptcy ¶ 23.13 at 591–92 (14th ed. 1971).

**962**

proceeding against the Bank was instituted by it as "debtor in possession," in which capacity it was acting as a trustee,[29] for the benefit of creditors,[30] and under a duty to recover what property it could for the estate's benefit.[31] Indeed, the court, in revesting the debtor with possession, ordered it "to proceed forthwith with . . . the recovery of any assets belonging to this estate . . . ."[32]

Prior to confirmation any recovery in the proceeding against the Bank could have been availed of for distribution to the creditors as part of the arrangement; now, any recovery is for the sole benefit of the debtor. When the debtor's proposed arrangement of a ten per cent distribution to creditors was approved and confirmed its unsecured debts were fully discharged.[33] And since the debtor's plan provided neither for the retention of jurisdiction nor for any retained interest for the benefit of creditors in the proceeds of a recovery,[34] there is no basis for any distribution to creditors in the event debtor succeeds upon its claims against the Bank. In sum, this proceeding is for the sole benefit of the debtor; it cannot contribute to the effectuation of the arrangement, and consequently jurisdiction over it was lost when the arrangement was confirmed.

29. Bankruptcy Act § 342, 11 U.S.C. § 742 (1970).

30. In re Martin Custom Made Tires Corp., 108 F.2d 172, 173 (2d Cir. 1939). *See* 8 Collier on Bankruptcy ¶ 6.32 [1] at 962 (14th ed. 1971).

31. In the Matter of Casco Fashions, Inc., 490 F.2d 1197 (2d Cir., 1973); Whiteford Plastics Co. v. Chase Nat'l Bank, 179 F.2d 582, 585 (2d Cir. 1950) (Clark, J., dissenting).

32. The Bankruptcy Act, § 342, 11 U.S.C. § 742 (1970), provides that the powers of a debtor in possession are " . . . subject . . . at all times . . . to such limitations, restrictions, terms, and conditions as the court may from time to time prescribe." *See* Whiteford Plastics Co. v. Chase Nat'l Bank, 179 F.2d 582, 584 (2d Cir. 1950).

33. Bankruptcy Act § 371, 11 U.S.C. § 771 (1970). *See also* Bankruptcy Act § 386, 11

U.S.C. § 786 (1970), which provides that the arrangement can be attacked for fraud only within 6 months after confirmation; this was not done in the instant case. The parties have stipulated the pending proceeding against the Bank was known to creditors prior to approval and confirmation of debtor's Plan of Arrangement.

34. *Cf.* In re Kessler, 90 F.Supp. 1012 (S. D.Cal.1950), which held that the court had jurisdiction of a post-confirmation action by a Chapter XI receiver to invalidate a mortgage since the plan provided that any proceeds from the action would be distributed to creditors. *Compare* Whiteford Plastics Co. v. Chase Nat'l Bank, 179 F.2d 582 (2d Cir. 1950), which held that a debtor could not invalidate the lien of a secured creditor in a post-confirmation action, since the plan did not provide for distribution to creditors of the value of the security.