In the Matter of CENTENNIAL INDUS-TRIES, INC., d/b/a Biddle Purchasing Company; R. K. Carter & Co.; Derrick Leonard & Co.; Kanowitz, Farese & Co.; Cam International; Harben Company; Gotham Druggists' Supply; Auto Parts & Gear; Jabro Auto Parts & Ware-house; and Atlantic Can Co.; Debtors.

CENTENNIAL INDUSTRIES, INC., Debtor-in-Possession, Plaintiff,

v.

Steve KLEIN and Merchandise Liquidators, Inc., Defendants.

Bankruptcy No. 78 B 1658.

United States Bankruptcy Court, S. D. New York.

March 16, 1982.

Robert L. Howard, Glass & Howard, New York City, for debtor/plaintiff.

Otterbourg, Steindler, Houston & Rosen, New York City, for defendants.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for Centennial Industries, Inc.

## MEMORANDUM AND ORDER

JOHN J. GALGAY, Bankruptcy Judge.

For reasons to be set forth in the following discussion, this Court grants defendants' motion to dismiss the instant adversary proceeding and denies plaintiff's cross-motion for transfer pursuant to Bankruptcy Rule 915(b).

On April 24, 1979, during the pendency of its Chapter XI proceeding, Centennial Industries, Inc., ("Centennial") as debtor in possession initiated an adversary proceeding under Bankruptcy Rule 11–61(a)(1) against Merchandise Liquidators, Inc. ("MLI") and Steve Klein ("Klein"), the president of MLI. Centennial sought recovery of $56,590.40 allegedly owed by defendants on the importation and resale of merchandise pursuant to a joint venture agreement; it also sought a turnover of 15,455 Gutter Mount Citizens' Band ("C.B.") Antennas and 683 Magnetic C.B. Antennas that it had allegedly paid for and which were delivered to MLI but not resold. In addition, Centennial sought interest, costs and disbursements.

Centennial had originally commenced an action against MLI in the Court of Common Pleas in Bucks County, Pennsylvania to recover sums for goods sold and delivered. Klein was not named as a defendant. On September 13, 1978, approximately two weeks after serving MLI with an amended or second complaint in the Pennsylvania action, Centennial filed a petition in this Court to effect a plan under Chapter XI of the Bankruptcy Act ("Act"). Thereafter, it continued the operation and management of its business as a debtor in possession.

When MLI filed its preliminary objection to Centennial's complaint in the Pennsylvania action, it moved to strike the complaint on the grounds that the Pennsylvania Court lacked jurisdiction because this Court has superseding jurisdiction.[1] Centennial did not proceed any further with the state court action. Instead, it commenced the instant adversary proceeding against MLI and Klein.

On July 30, 1979, defendants MLI and Klein moved to dismiss the adversary proceeding on the grounds: (a) that this Court lacks summary jurisdiction to hear and determine the controversy, and defendants are entitled to an adjudication of the controversy in a plenary action; and (b) that the Court of Common Pleas in Bucks County, Pennsylvania should be the forum in which this controversy is determined since Centennial had previously initiated an action in that court to obtain essentially the same relief it now seeks in bankruptcy court. The return date and hearing on defendants' motion to dismiss were postponed to enable counsel for Centennial to take deposition of Klein. Subsequent hearings were adjourned by consent of the parties.

Confirmation of Centennial's plan of arrangement occurred on March 13, 1980. An order of confirmation was thereafter entered. Neither the plan of arrangement nor the order of confirmation specifically provide for this Court to retain jurisdiction over the instant adversary proceeding.

On June 17, 1980, Centennial filed a cross-motion in this Court for an order transferring this proceeding pursuant to Bankruptcy Rule 915(b) to the United States District Court for the Southern District of New York. In addition, Centennial has submitted a proposed amended complaint in which it claims, *inter alia*, that it has sustained damages in the amount of at least $97,981.00 plus interest and it seeks a trial by jury. MLI subsequently certified the Pennsylvania action as ready for trial.

---

1. *Motion to Strike for Lack of Jurisdiction*:
   A. The Defendant moves the Court to strike the Complaint since jurisdiction of claims is vested in the United States District Court— Southern District of New York—Bankruptcy No. 78–B–1658–G, and by Order of said Court, a copy of which is hereto attached as Exhibit "A", all proceedings are ordered stayed. Exhibit B to Affidavit of Robert L. Laufer sworn to June 13, 1980.

In support of its cross-motion to transfer to the District Court, Centennial notes that dismissal of an adversary proceeding pursuant to Bankruptcy Rule 915(b) is warranted where no independent ground for federal jurisdiction exists. Advisory Committee Note, [1976] Collier Pamphlet Ed. pt. 2, at 279. However Centennial contends that transfer is appropriate with respect to the instant adversary proceeding because diversity jurisdiction exists: plaintiff is a citizen of New York; defendants are citizens of Pennsylvania; and the amount in controversy exceeds $10,000. Centennial further asserts that defendants are amenable to personal jurisdiction in the Southern District, that venue is proper, and that the Southern District is the most convenient forum. Centennial also argues that MLI admitted to the jurisdiction of the Bankruptcy Court when it objected to the jurisdiction of the Pennsylvania Court.

In support of their motion to dismiss, defendants MLI and Klein argue that this Court lost jurisdiction to grant the relief sought by Centennial once confirmation of the plan of arrangement had occurred and the case was dismissed pursuant to section 367(4) of the Act without specific provision in the plan for this Court to retain jurisdiction of the adversary proceeding. In other words, defendants assert that this Court no longer has power to act with respect to this matter.

MLI and Klein also contend that Bankruptcy Rule 915(b) is not applicable to the proceeding because the conditions precedent to its implementation had not been complied with prior to entry of the order of confirmation. They assert that there has been no hearing before this Court on the issue of jurisdiction and that, consequently, there has been no determination that defendants' objection to jurisdiction should be sustained. Defendants also indicate that this Court did not have an opportunity prior to confirmation to consider whether the instant proceeding should be dismissed or, if independent federal jurisdiction exists, whether it should be transferred to the District Court.

Defendants additionally object to the fact that Centennial has involved Klein as a defendant in the adversary proceeding. They contend that this Court has no jurisdiction over his person and that Centennial made sales to and had dealings with MLI only, not with Klein in any personal capacity. Defendants also argue that Centennial, having initially chosen to litigate in Pennsylvania, cannot now conclude that the state is an inconvenient forum. Lastly, defendants object that the proposed amended complaint seeks to broaden Centennial's claim and to enlarge its procedural rights.

I

The threshold issue raised by defendants' motion to dismiss and plaintiff's cross-motion to transfer pursuant to Bankruptcy Rule 915(b) concerns the exact effect that the confirmation of Centennial's plan of arrangement has had on the jurisdiction of this Court to act with respect to the instant adversary proceeding.

Section 367(4) of *the Act* provides that "upon confirmation of an arrangement ... except as otherwise provided in sections 369 and 370 of this Act, the case shall be dismissed." The exceptions to dismissal contained in sections 369 and 370 are not relevant to this proceeding: they concern the court's retention of jurisdiction to allow or disallow certain claims and to distribute the consideration, if any, deposited for claims so allowed.

The Act differentiates between the "case" and the "estate." The estate is not closed until the court enters a final decree pursuant to section 372 upon consummation of the proceeding. The effect of the dismissal of the case prior to the closing of the estate is that the bankruptcy court loses certain jurisdiction it previously possessed. *In re Grayson-Robinson Stores, Inc.*, 227 F.Supp. 613 (S.D.N.Y.1964); 9 *Collier on Bankruptcy* ¶ 9.28 (14th ed. 1978).

If the plan of arrangement so provides, the Court may retain jurisdiction after confirmation pursuant to Act sections 368 and 357(7) until the terms of the plan have been fully performed. However, the jurisdiction

that may be retained under the foregoing sections is limited to the powers conferred in sections 344 and 377, which concern respectively: (1) the issuance of certificates of indebtedness after confirmation; and (2) the court's power to act where the debtor defaults in any of the terms of the arrangement or the arrangement terminates as a consequence of the happening of a condition specified in the arrangement. *In the Matter of Oceana International, Inc.*, 376 F.Supp. 956, 959 (S.D.N.Y.1974); *In re Gordon*, 44 F.Supp. 581, 581–82 (S.D.N.Y.1947); 9 *Collier on Bankruptcy* ¶¶ 9.28, 9.29[2] (14th ed. 1978).

Thus, the dismissal of the case pursuant to section 367(4) has a profound effect on the jurisdiction of this Court:

> The total effect of section 367(4) upon the jurisdiction of the court . . . involves basically a distinction between things which by their nature cannot be done until after confirmation and consequent dismissal of the case, and things which by their nature can be done prior to confirmation. Powers which could be exercised prior to confirmation can no longer be exercised subsequent thereto with various exceptions. Powers which by their nature can be exercised only after confirmation are, of course, possessed by the court after that time.

9 *Collier on Bankruptcy* ¶ 9.28 (14th ed. 1978).

*In the Matter of Oceana International, Inc.,* 376 F.Supp. 956 (S.D.N.Y.1974) illustrates the nature of the bankruptcy court's loss of jurisdiction upon confirmation of a debtor's plan of arrangement. During the pendency of its Chapter XI proceeding, the debtor corporation in *Oceana* commenced a summary action to void a sale of assets by a secured bank creditor that had taken place prior to the filing of the petition. After confirmation of the debtor's plan had occurred, the bank moved to dismiss the proceeding still pending against it on the grounds that the bankruptcy court no longer had jurisdiction. The District Court affirmed the bankruptcy judge's determination that jurisdiction did not survive confirmation of the debtor's plan. Judge Weinfeld noted that

> Prior to confirmation any recovery in the proceeding against the Bank could have been availed of for the distribution to the creditors as part of the arrangement; now any recovery is for the sole benefit of the debtor . . . it cannot contribute to the effectuation of the arrangement, and consequently jurisdiction over it was lost when the arrangement was confirmed.

*Id.* at 962.

Application of the foregoing principles to the instant adversary proceeding dictates the conclusion that this Court lost jurisdiction to act on the matter upon confirmation of Centennial's plan of arrangement and the consequent dismissal of the case. At this time, any benefit that could be derived from the adversary proceeding would inure only to Centennial and not to the creditors for whose benefit the plan was also created.

## II.

Having decided that this Court lacks jurisdiction in the post-confirmation setting to act with respect to the instant adversary proceeding, this Court must determine whether it can transfer the proceeding pursuant to Bankruptcy Rule 915(b) to the United States District Court for the Southern District of New York as requested by Centennial.

> In pertinent part, Rule 915 provides: (b) *Dismissal or Transfer.* If an objection to the jurisdiction of an adversary proceeding is sustained, the bankruptcy judge shall dismiss such proceeding . . . or transfer it to the civil docket of the district court, as may be appropriate. On transfer pursuant to this rule, the proceeding . . . shall continue as if filed as a civil action in the court of bankruptcy.

The objection to jurisdiction to which the Rule refers is an objection to the summary jurisdiction of the bankruptcy court.

The adoption of Rule 915(b) provided a vehicle for mitigating the otherwise harsh consequence, dismissal, that had previously

attended a successful objection to the summary jurisdiction of the court over an adversary proceeding. 13 *Collier on Bankruptcy* ¶ 915.04 (14th ed. 1977). The Advisory Committee's Note to Rule 915(b) explains that where independent federal jurisdiction exists, it "may be appropriate" to transfer an adversary proceeding to the district court sitting in the same judicial district. [1976] Collier Pamphlet Ed. pt. 2, at 279.

The summary jurisdiction of the bankruptcy court conferred in section 2(a) of the Act is limited to proceedings involving claims to property in the actual or constructive possession of the court. In such proceedings, the bankruptcy court may summarily determine the rights of the respective parties to the property in question. In addition, under section 2(a)(7), where property claimed by the debtor is in the possession of an adverse party, such party will be deemed to have consented to the summary jurisdiction of the bankruptcy court unless timely objection to jurisdiction is interposed.

█ The bankruptcy court, however, is not ousted from jurisdiction over an adversary proceeding by the mere fact that an adverse claimant has timely objected to the summary jurisdiction of the court. *Harrison v. Chamberlin*, 271 U.S. 191, 194, 46 S.Ct. 467, 468, 70 L.Ed. 897 (1926). The court has jurisdiction in the first instance to determine whether it has jurisdiction to proceed. Thus, the court has power to embark upon "a preliminary inquiry to determine whether the claim is real and substantial or merely colorable." *Id.* Moreover, the court has a duty to conduct such an inquiry. *Louisville Trust Co. v. Cominger*, 184 U.S. 18, 25–26, 22 S.Ct. 293, 296, 46 L.Ed. 413 (1902); *Jackson v. Sports Co. of Texas Inc.*, 278 F.2d 716, 718 (5th Cir. 1960); *Maule Industries v. Gerstel*, 232 F.2d 294, 298 (5th Cir. 1956); *In re Gill*, 190 F. 726 (8th Cir. 1911); *In re United Merchants and Manufacturers, Inc.*, 3 B.R. 286, 292 (Bkrtcy.S.D.N.Y.1980); 2 *Collier on Bankruptcy* ¶ 23.07 (14th ed. 1976).

█ An adverse claim is real and substantial when the preliminary inquiry of the court "discloses a contested matter of right, involving some fair doubt and reasonable room for controversy." *Harrison v. Chamberlin*, at 195, 46 S.Ct. at 469, *citing Board of Education v. Leary*, 236 F. 521, 525 (8th Cir. 1916).

A party who timely asserts a bona fide adverse claim to property in his possession that is also claimed by the debtor is entitled to a plenary adjudication of the controversy. Section 23(a) of the Act confers plenary jurisdiction to United States district courts over all controversies arising in bankruptcy proceedings "in the same manner and to the same extent as though such proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants." This plenary jurisdiction is concurrent with that of state courts. Section 23(b) restricts plenary suits brought on behalf of the debtor to those courts where the bankrupt might have sued had bankruptcy proceedings not been instituted.

In the instant case, defendants MLI and Klein objected by motion to the summary jurisdiction of this Court to hear and determine the rights and claims of the respective parties to the money and other property in question. Due to the fact that several scheduled hearings on the issue of jurisdiction were adjourned, this Court did not have occasion prior to the confirmation of Centennial's plan of arrangement to enter into the necessary inquiry concerning the genuineness and substantiality of the adverse claim asserted by defendants.

█ For reasons set forth in the preceding discussion, this Court lost jurisdiction to act with respect to this adversary proceeding upon confirmation of Centennial's plan of arrangement. Accordingly, in the post-confirmation setting of this case, this Court lacks jurisdiction to examine defendants' adverse claim in order to determine whether their objection to the summary jurisdiction of this Court should be sustained.

Bankruptcy Rule 915(b) clearly contemplates a situation where the bankruptcy court has made a determination sustaining an objection to the summary jurisdiction of

the court. The Rule is therefore inapplicable to the circumstances of this case. Consequently, the instant adversary proceeding may not be transferred pursuant to Rule 915(b) to the United States District Court for the Southern District of New York.

## IV

In conclusion, this Court no longer has jurisdiction to act with respect to the instant adversary proceeding. Therefore, it cannot hear or determine the jurisdictional objection raised by defendants. This Court consequently denies Centennial's motion for transfer pursuant to Bankruptcy Rule 915(b) to the United States District Court for the Southern District of New York. As defendants have certified the action previously commenced by Centennial in the Court of Common Pleas in Bucks County, Pennsylvania as ready for trial, Centennial may still be able to pursue this litigation in the Pennsylvania state courts. The practical effect of denying Centennial's motion to transfer is the dismissal of this adversary proceeding.

It is so ordered.