387 F.Supp. 1395 (1975)
In the Matter of Billy Joe WARREN, Bankrupt.
William P. MEEHAN, Trustee, Plaintiff-Appellee,
v.
NELSONVILLE MOBILE HOME SALES et al., Defendants-Appellants.
No. 60657.
United States District Court, S. D. Ohio, E. D.
January 20, 1975.
*1396 *1397 Craig Stewart, Denis J. Murphy, Patcher, Murphy & Allison, Columbus, Ohio, for plaintiff-appellee.
Lawrence J. Burns, Cunningham, Burns & Gibbs Co., L. P. A., Columbus, Ohio, for defendants-appellants.

OPINION AND ORDER
KINNEARY, Chief Judge.
This is an appeal from an Order of the bankruptcy court granting the trustee a judgment on a cause of action arising under the Truth in Lending Act, 15 U.S.C. § 1601 et seq.
Plaintiff-appellee, William P. Meehan, is the trustee in bankruptcy for the estate of the bankrupts, Billy Joe and Jacalyn Marie Warren. Defendants-appellants are Nelsonville Mobile Home Sales and the First National Bank of Nelsonville.
The bankruptcy court made the following finding of uncontroverted fact:
On February 16, 1973, Billy Joe and Jacalyn Marie Warren purchased a 1973 Hillcrest Mobile Home from Nelsonville Mobile Home Sales. Two documents pertinent to the transaction have been furnished to the Court. One is a "Retail Installment Sale  Note  Security Agreement and Disclosure Statement" (Attached hereto as Exhibit A); the other is a "Purchase Agreement, UCC § 2-201" (Attached hereto as Exhibit B). Each is a one sheet document with printing on both sides. In the upper right hand corner of the face of each document is the date, "2-16-73." On the reverse side of the combined note, security agreement and disclosure statement is an assignment of the note from Nelsonville Mobile Home Sales to First National Bank of Nelsonville, Ohio dated February 17, 1972.
Mr. and Mrs. Warren took delivery of the mobile home, made four payments, and on September 12, 1973 filed petitions in bankruptcy in this Court. After the first meeting of creditors William P. Meehan was appointed by the Court as trustee in bankruptcy for both bankrupts and on October 16, 1973, Craig Stewart, Esq., attorney for the trustee wrote to the attorney for the First National Bank of Nelsonville, Michael Nolan, Esq., and stated:
Dear Mike:
This confirms our previous telephone conversation wherein I released the mobile home to the First National Bank of Nelsonville, Ohio. Your client may repossess or renegotiate. This was conditioned upon your representation that there was approximately a $6000 plus payoff, that your client is properly secured on the mobile home, and that you would send me all documents requested which show the current balance and the lien.
 Very truly yours,
 /s/ Craig
No application to abandon the mobile home has yet been filed by the trustee in this Court and no order of abandonment has been issued by the Court.
On October 26, 1973, William P. Meehan, the trustee, filed a complaint in this Court naming Nelsonville Mobile Home Sales and First National Bank of Nelsonville as defendants. In the complaint he alleged that the sales company and the bank had violated the Federal Truth in Lending Act by not including the credit life insurance premium in the finance charge and thus disclosing to the Warrens a lower "finance charge" and "annual percentage rate" than were actually imposed upon them in the transaction of February 16, 1973.
. . . . . .
The document used by Nelsonville Mobile Home Sales, Inc. on February 16, 1973 to make the required Federal *1398 disclosures to Mr. and Mrs. Warren was a combined "Retail Installment Sale-Note-Security Agreement and Disclosure Statement" (Exhibit A). This form is clearly divided into four parts: a cost disclosure, insurance disclosure, description of goods, and note and purchase money security agreement. In the cost disclosure section of the document a charge of $1113.00 is made for "Insur." and this charge is included in the "Amount Financed." The same portion of the document discloses a "Finance Charge" of $5575.28 and an "Annual Percentage Rate" of 10.70%.
The "Insurance Disclosure" portion of the document contains the following language:
. . . Credit Life and/or Disability Insurance are not required for credit. Such insurance is available at a cost of $600.00 for the term of the credit.
 I (do) (do not) desire Cr. Life
 & Physical Damage $513.00
 /s/ Billy J. Warren
 (underlined material handwritten)
The bankruptcy court held that Billy Joe Warren's written indication of his desire to purchase credit life insurance was not specifically dated as required by Regulation Z, 12 C.F.R. 226.4(a)(5) and the Truth in Lending Act. Failure to comply with Regulation Z requires the credit life charge to be included in the finance charge on the disclosure statement. 15 U.S.C. § 1605(b). It was not; therefore, the finance charge was understated by $600.00 on the disclosure statement. The disclosed annual percentage rate was 10.70%, but the actual rate, with the addition of the $600.00 credit life charge, was 12.75%. The bankruptcy court further found that both Nelsonville Mobile Home Sales and the First National Bank of Nelsonville are creditors within the meaning of the Truth in Lending Act, 15 U.S.C. § 1602(f), and are jointly liable in the amount of $1,000 damages, attorney's fees, and costs. 15 U.S.C. § 1640.
Appellants' brief raises three issues on appeal:
1. Did the bankruptcy court have jurisdiction to adjudicate the Truth in Lending cause of action?
2. Is the trustee a proper party to bring this action?
3. Did a violation of the Truth in Lending Act occur?
Each of these issues will be considered separately below.

I
Appellants answered the complaint and submitted the case for decision by the bankruptcy court without objecting to that court's jurisdiction. The first time appellants raised the jurisdictional issue was in their brief in this Court.[1] Plaintiff argues that appellants waived any objection they had to the bankruptcy court's jurisdiction. Appellants contend that the bankruptcy court was wholly without jurisdiction, and that jurisdiction cannot be conferred by consent or waiver.
An action to enforce a Truth in Lending Act liability may be brought in a United States District Court or "in any other court of competent jurisdiction . . .." 15 U.S.C. § 1681p. There is no provision in the Truth in Lending Act for jurisdiction in the bankruptcy court.
*1399 Section 2a(7) of the Bankruptcy Act, 11 U.S.C. § 11a(7), provides, in relevant part:
. . . courts of bankruptcy . . . are hereby invested . . . with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings under this title . . ., to 
. . . . . .
(7) Cause the estates of bankrupts to be collected, reduced to money, and distributed, and determine controversies in relation thereto, except as herein otherwise provided . . .; and where in a controversy arising in a proceeding under this title an adverse party does not interpose objection to the summary jurisdiction of the court of bankruptcy, by answer or motion filed before the expiration of the time prescribed by law or rule of court or fixed or extended by order of court for the filing of an answer to the petition, motion or other pleading to which he is adverse, he shall be deemed to have consented to such jurisdiction; . . .
Prior to the enactment of the Bankruptcy Act of 1898 the bankruptcy courts had broad powers in law and equity to determine controversies relating to the estates of bankrupts. In 1898 the broad jurisdictional grant was limited by the addition of the phrase "except as herein provided." See, Williams v. Austrian, 331 U.S. 642, 648-649, 658, 67 S.Ct. 1443, 91 L.Ed. 1718 (1947). The exception refers to § 23 of the Bankruptcy Act, 11 U.S.C. § 46, which provides, in relevant part:
(a) The United States district courts shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings under this title, between receivers and trustees as such and adverse claimants, concerning the property acquired or claimed by the receivers or trustees, in the same manner and to the same extent as though such proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants.
(b) Suits by the receiver and the trustee shall be brought or prosecuted only in the courts where the bankrupt might have brought or prosecuted them if proceedings under this title had not been instituted, unless by consent of the defendant . . ..
Thus, § 23 withdraws from the bankruptcy courts jurisdiction of plenary suits which prior to bankruptcy the bankrupt might have brought in State courts. The bankruptcy court, however, has summary jurisdiction of proceedings under the Bankruptcy Act. The question for decision is whether, under § 2a(7) of the Bankruptcy Act, an adverse party may waive his right to a plenary suit and consent to the summary adjudication of a right of action in the bankruptcy court.
The Court will first consider the distinction between summary proceedings and plenary actions. It is mainly an historical one. The principal difference today is that summary proceedings are tried to the court, whereas there is a right to a jury trial in most plenary actions. Copenhaver, Summary Jurisdiction, 41 Journal of the National Conference of Referees in Bankruptcy 108 (1967). It is said that summary proceedings are quicker and less formal, while plenary actions are ordinary civil suits with summons, formal pleadings and trial. 2 Collier on Bankruptcy ¶ 23.02, pp. 440-441 (14th ed. 1973). See, Katchen v. Landy, 382 U.S. 323, 326-327, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); Tamasha Town & Country Club v. McAlester Construction Finance Corp., 252 F.Supp. 80, 85 (S.D.Cal.1966). With the promulgation of the new Bankruptcy Rules the procedures observed in bankruptcy courts are uniform and very much similar to the procedures required by the Federal Rules of Civil Procedure. Of course, the bankruptcy court has always had a constitutional obligation to accord litigants before it due process of law.
The summary jurisdiction of the bankruptcy courts over "proceedings in bankruptcy" was described by the United States Supreme Court in United *1400 States Fidelity & Guaranty Co. v. Bray, 225 U.S. 205, 217, 32 S.Ct. 620, 625, 56 L.Ed. 1055 (1912):
We think . . . that the jurisdiction of the bankruptcy courts in all "proceedings in bankruptcy" is intended to be exclusive of all other courts, and that such proceedings include, among others, all matters of administration, such as the allowance, rejection, and reconsideration of claims, the reduction of the estates to money, and its distribution, the determination of the preferences and priorities to be accorded to claims presented for allowance and payment in regular course, and the supervision and control of the trustees and others who are employed to assist them.
Controversies with respect to property passing to the trustee under § 70a of the Bankruptcy Act are within the bankruptcy court's summary jurisdiction when:
1. The property is within the actual possession of the bankruptcy court. Board of Trade v. Johnson, 264 U.S. 1, 11-12, 44 S.Ct. 232, 68 L.Ed. 533 (1924). 2 Collier on Bankruptcy ¶ 23.04, pp. 452-461 (14th ed. 1973).
2. The bankruptcy court has constructive possession of the property. Maggio v. Zeitz, 333 U.S. 56, 63-64, 68 S.Ct. 401, 92 L.Ed. 476 (1947); Harrison v. Chamberlin, 271 U.S. 191, 193-195, 46 S.Ct. 467, 70 L.Ed. 897 (1926); In re Bayview Estates, Inc., 508 F.2d 405 (6th Cir. 1974); Willyerd v. Buildex Co., 463 F.2d 996, 999 (6th Cir. 1972); In re Mt. Forest Fur Farms of America, Inc., 122 F.2d 232, 238 (6th Cir. 1941); In re Cadillac Brewing Co., 102 F.2d 369, 370 (6th Cir. 1939).
3. The adverse claimant to the property consents. Detroit Trust Co. v. Pontiac Savings, 196 F. 29, 32 (6th Cir. 1912) affirmed, 237 U.S. 186, 35 S.Ct. 509, 59 L.Ed. 907 (1915); In re Prima Co., 98 F.2d 952, 959 (7th Cir. 1938); Fairbanks Steam Shovel Co. v. Wills, 212 F. 688 (7th Cir. 1914), affirmed, 240 U.S. 642, 644, 36 S.Ct. 466, 60 L.Ed. 841 (1916); In re Cook, 58 F.Supp. 361 (W.D.Ky. 1945); In re Roark, 28 F.Supp. 515 (W.D.Ky.1939); In re Traylor, 27 F.Supp. 778, 780 (W.D.Ky. 1939); In re Ahmann, 331 F. Supp. 384, 389-390 (W.D.Mo. 1971); In re Independent Book Corp., 33 F.Supp. 275, 276 (S.D. N.Y.1940). See, Willyerd v. Buildex Co., 463 F.2d at 1000, citing In re Hammond Standish & Co., 126 F.Supp. 353, 355 (E.D. Mich.1954). See generally, 2 Collier on Bankruptcy, ¶ 23.08 p. 530 ff.
A right of action under the Truth in Lending Act is property in the possession of the bankruptcy court which passes to the trustee under § 70a of the Bankruptcy Act. See p. 1403 below. Although the bankruptcy court has summary jurisdiction to adjudicate title to the cause of action, it does not, absent consent, have summary jurisdiction to enforce the chose in action against the party liable thereon. Kelley v. Gill, 245 U.S. 116, 119-122, 38 S.Ct. 38, 62 L.Ed. 185 (1917); In re Joslyn's Estate, 168 F.2d 803, 806-807 (7th Cir. 1948); In re Roman, 23 F.2d 556, 558 (2d Cir. 1928); Tamasha Town & Country Club v. McAlester Construction Finance Corp., 252 F.Supp. at 86 (and cases cited therein). 2 Collier on Bankruptcy, ¶ 23.05, pp. 487, 489-490.
Appellants rely on this line of cases for the proposition that the bankruptcy court never has jurisdiction to adjudicate the merits of a cause of action for damages. This view fails to consider several instances where bankruptcy courts are acknowledged to have summary jurisdiction under § 2a(7) to adjudicate rights of action.
There are numerous cases holding that when an adverse claimant files a proof of claim, § 57 of the Bankruptcy Act (11 U.S.C. § 93), he has consented to the summary jurisdiction of the bankruptcy court to adjudicate the *1401 claim and any counterclaims asserted by the trustee which arise out of the same events giving rise to the claim. See, e. g., Gill v. Phillips, 337 F.2d 258, 264 n. 13 (5th Cir. 1964) (and cases cited therein). 1 Collier on Bankruptcy ¶ 2.40(1.1) pp. 264-268.2 (14th ed. 1973); Copenhaver, Summary Jurisdiction, 41 Journal of the National Conference of Referees in Bankruptcy 108, 110 (1967). Similarly, if the adverse party files a reclamation petition or a petition for leave to foreclose, the bankruptcy court gains summary jurisdiction of related claims. And, if the trustee files a petition for turnover of specific property in the possession of an adverse party who does not assert his right to a plenary proceeding and who does not object to the bankruptcy court's jurisdiction within the time fixed for answer, the bankruptcy court acquires by consent summary jurisdiction to adjudicate the cause of action asserting the bankrupt's claims against the adverse party.[2] Copenhaver, Summary Jurisdiction, 41 Journal of the National Conference of Referees in Bankruptcy 108, 110 (1967). Section 2a(7) of the Bankruptcy Act, therefore, does confer subject matter jurisdiction on the bankruptcy court to adjudicate rights of action which are controversies in relation to proceedings in bankruptcy when the adverse party consents by affirmatively invoking the bankruptcy court's jurisdiction or by failing to object to its assertion of jurisdiction.[3]
The bankruptcy court's jurisdiction under § 2a(7) of the Bankruptcy Act[4] to adjudicate by consent causes of action passing to the trustee under § 70a of the Act has been placed in doubt by the analysis of some commentators, Copenhaver, Summary Jurisdiction, 41 Journal of the National Conference of Referees in Bankruptcy 108, 110-111 (1967), and discussions of the scope of § 2a(7) in some decisions. The Sixth Circuit Court of Appeals considered the § 2a(7) jurisdiction of the bankruptcy court in In re Pennington, 339 F.2d 583 (6th Cir. 1965). The facts of Pennington are these. The bankrupts owned a restaurant business. The trustee filed an application to sell the restaurant's assets free and clear of all liens. At a hearing on the application, General Development Corporation orally advised the bankruptcy court that it was a creditor of the bankrupts whose debt was secured by a lien on the assets of the restaurant. The trustee objected to the validity of General Development Corporation's chattel mortgage; and, further, asserted a counterclaim arising out of the same transaction. At the hearing on the objection and counterclaim, General Development Corporation orally objected to the summary jurisdiction of the bankruptcy court to determine the validity of the chattel mortgage and adjudicate the counterclaim. The bankruptcy court, finding that General Development Corporation had not filed a proof of claim, held that it had not consented to summary jurisdiction. The Sixth Circuit Court of Appeals adopted this factual finding.
The Circuit Court then turned to a discussion of consent jurisriction under § 2a(7) of the Bankruptcy Act:
Section 2, sub. a(7), dealing with the jurisdiction of courts of bankruptcy, *1402 contains the specific qualification "except as herein otherwise provided." Appellant ignores this qualification in his argument. In Williams v. Austrian, 331 U.S. 642, [644, 67 S.Ct. 1443, 91 L.Ed. 1718], the Supreme Court held that this exception had reference to Section 23 of the Bankruptcy Act hereinabove discussed. This question is well analyzed and discussed in In re Houston Seed Co., 122 F.Supp. 340, D.C.Ala., to which reference is made. We are of the opinion that Section 2, sub. a(7) of the Bankruptcy Act is not applicable to the issue presently before us.
In re Pennington, 339 F.2d at 584-585.
The controlling facts of In re Houston Seed Co., Inc., 122 F.Supp. 340 (N.D. Ala.1954) are as follows. Directors of the bankrupt corporation filed proofs of unsecured claims. The trustee moved for disallowance of the claims, and he filed counterclaims which were unrelated to the directors' claims. Some two and one-half months after the filing of the counterclaims, but prior to final judgment, the directors objected to the bankruptcy court's summary jurisdiction. The District Court in Houston Seed began its analysis by stating that § 23 of the Bankruptcy Act withdraws from bankruptcy courts jurisdiction of plenary suits. The Court then discussed the issue of consent:
If, as provided in Section 2, sub. a(7) as amended, the controversy is one "arising in a proceeding under this title", the adverse party is deemed to have consented to the summary jurisdiction of the bankruptcy court by not interposing an objection thereto in the time and manner therein provided. By the express provision of Section 23, sub. b an adverse claimant can consent to hearing a controversy properly the subject of a plenary suit in a summary manner. The consent there provided for may be formally expressed or it may arise from acts inconsistent with a denial of summary jurisdiction. More specifically, the right to litigate the disputed claim by the ordinary procedure in a plenary suit may be waived by a trial on the merits without timely objections.
In re Houston Seed Co., Inc., 122 F. Supp. at 342.
The Court concluded that under the provisions of § 2a(7) of the Bankruptcy Act an adverse party who objected to summary jurisdiction will not be deemed to have consented to summary jurisdiction because he filed a proof of claim.
The Houston Seed decision recognizes that an adverse party may waive his right to a plenary suit and consent to the summary jurisdiction of the bankruptcy court by participating in a trial on the merits. But the mere filing of a proof of claim is not a consent to summary jurisdiction.[5] The Sixth Circuit's decision in Pennington, which adopts the Houston Seed analysis of § 2a(7), is thus limited to the rule that a secured creditor who, though appearing and participating in proceedings, objects to the summary jurisdiction of the bankruptcy court, has not consented to the bankruptcy court's jurisdiction of related counterclaims.
The Sixth Circuit Court of Appeals early adopted the view that an adverse party who appears generally and answers on the merits without questioning jurisdiction, waives any objection and impliedly consents to summary adjudication. Detroit Trust Co. v. Pontiac Savings, 196 F. 29, 32 (6th Cir. 1912). Although the United States District Court, and not the bankruptcy court, has jurisdiction by consent of plenary suits, the adverse party may waive his right to *1403 plenary adjudication and consent to the summary jurisdiction of the bankruptcy court. In re J. S. Mobile Homes, 434 F. 2d 1294, 1296 (9th Cir. 1970); Guardian Title Co., Inc. v. Sulmeyer, 417 F.2d at 1291-1297. See, In re Prima Co., 98 F.2d 952, 959 (7th Cir. 1938); In re Ahmann, 331 F.Supp. 384, 389-390 (W. D.Mo.1971).
Consent by participation without objection to jurisdiction is not to be technically construed. Rule 915 of the Rules of Bankruptcy Procedure provides that "a party waives objection to jurisdiction of an adversary proceeding or a contested matter and thereby consents to such jurisdiction if he does not make objection by a timely motion or answer, which ever is first served." If the adverse party does not object to jurisdiction in his answer, the bankruptcy court should liberally grant leave to amend the answer prior to trial. In re Los Angeles Trust Deed & Mortgage Exchange, 464 F.2d 1136, 1139-1140 (9th Cir. 1972).
Appellants herein let the action go to final judgment and filed a notice of appeal and statement of issues on appeal before finally raising their objection to the bankruptcy court's exercise of summary jurisdiction in their brief on appeal. The Court holds that under the facts of this case appellants waived any objection they had to the summary jurisdiction of the bankruptcy court and consented to adjudication of the trustee's right of action in that court.

II
Appellants argue that the trustee is not vested with title to the Truth in Lending right of action by operation of § 70a of the Bankruptcy Act, (11 U. S.C. § 110).
This Court has recently held in Porter v. Household Finance Corp., 336 F.Supp. 385 (S.D.Ohio E.D.1974) that a Truth in Lending Act cause of action passes to the trustee under the provisions of § 70a(5) of the Bankruptcy Act. In their brief appellants raise no new arguments not previously considered by the Court in Porter. Therefore, the Court holds that the Truth in Lending Act right of action passes to the trustee under the provisions of § 70a(5) of the Bankruptcy Act.

III
The Truth in Lending Act, 15 U.S.C. § 1605(b), requires that credit life charges be included in the finance charge unless the insurance is not a factor in the borrower getting the loan and the borrower gives "specific affirmative written indication of his desire" for credit life insurance "after written disclosure to him of the cost thereof." Regulation Z, 12 C.F.R. § 226.4(a)(5) which implements § 1605(b) requires that credit life charges be included in the finance charge unless:
(i) the insurance coverage is not required by the creditor and this fact is clearly and conspicuously disclosed in writing to the customer; and
(ii) any customer desiring such insurance coverage gives specific dated and separately signed affirmative written indication of such desire after receiving written disclosure to him of the cost of such insurance.
Appellee argues that the borrower's signature must be specifically dated, i. e., a date must appear next to the signature. Appellant contends that the signature is dated so long as the date of execution appears anywhere on the form.
As set out above in the statement of facts, pp. 1397-1398, the date Billy Joe Warren executed his written request for credit life insurance was written in the uppermost right hand corner of the disclosure statement. The insurance disclosures and Warren's request for insurance are near the middle of the page in a lined off portion of the form. No date appears proximate to Warren's signature. But the parties are in agreement that he executed his request for insurance coverage on the date appearing in the upper right hand corner of the form, February 16, 1973.
The model disclosure statement form adopted by the Federal Reserve Board as an example of compliance with Regulation Z provides for a date to be written in directly to the left of the borrower's *1404 signature indicating a desire for credit life insurance. There are no other interpretations of Regulation Z which shed light on the question presented to the Court.
The purpose of the Truth in Lending Act is to require uniform, mandatory disclosure of credit information so that consumers can make the best informed decision on the use of credit. 15 U.S.C. § 1601; 12 C.F.R. § 226.1(a)(2). The Regulation Z requirement that the borrower's written request be dated is apparently intended to insure that the debtor is informed of his credit life options and makes his decision contemporaneous with his making the credit contract. The dating requirement of Regulation Z must be construed in a manner consistent with the purpose of the Truth in Lending Act. Regulation Z clearly requires that the written indication of a desire for credit life insurance coverage must be dated. It does not unambiguously require the date to be specific or proximate to the debtor's signature. Such is without doubt the better practice. Failure to separately date the credit life request would most likely result in the credit life premium being included in the finance charge, if a bona fide dispute should arise as to the date of the execution of the debtor's indication of a desire for credit life coverage. However, where the disclosure statement containing the credit life disclosures and the debtor's affirmative written request for coverage is dated and there is no dispute as to the date the request was executed, the Regulation Z date requirement has been satisfied. Whether the date is at the top of the page on the disclosure statement or separately written next to the credit life request, the purpose of the Truth in Lending Act  to permit the debtor to make an informed credit choice  is equally well-fulfilled.
The Court holds that Appellee failed to prove a violation of the Truth in Lending Act. Accordingly, the decision of the bankruptcy court is hereby reversed. This case is remanded to the bankruptcy court with instructions that judgment be entered for Appellant.
NOTES
[1] Indeed, appellants failed to raise jurisdiction in their statements of issues as required by former BR-6(b)(2)(b), Bankruptcy Rules of the Southern District of Ohio. Cf. Rule B-6, subd. a, Bankruptcy Rules of the Southern District of Ohio (effective January 1, 1975). Rule 806 of the Rules of Bankruptcy Procedure requires the filing of a statement of the issues the appellant intends to present on appeal within 10 days after filing the notice of appeal. Appellants' brief was filed outside this 10 day period. The purpose of these rules is to permit the bankruptcy court to compile the record on appeal. Because the record before this Court is complete with respect to the jurisdictional issue, the Court will consider the question.
[2] Where the adverse claimant has lawful possession of the property, the trustee's claim on the property is in reality a chose in action.
[3] Which, because of the vagaries of the Bankruptcy Act and the construing case law, is not considered an act conferring subject matter jurisdiction, but is conceptualized as consent to personal jurisdiction. See, Guardian Title Co. v. Sulmeyer, 417 F.2d 1290, 1292 (9th Cir. 1969). Advisory Committee's Note to Rule 915, Rules of Bankruptcy Procedure. Subject matter jurisdiction is not conferred by consent, but by Sections 2a(7) and 23 of the Bankruptcy Act. Report of the Commission on the Bankruptcy Laws of the United States 91-92 (July, 1973) Hse.Doc.No. 93-137 pt. I, 93d Cong. 1st Sess.
[4] It is suggested in 2 Collier on Bankruptcy ¶ 23.08 p. 533, n. 9 that just as consent under § 23b confers plenary jurisdiction on the district court, that same consent may confer summary jurisdiction on the bankruptcy court.
[5] This rule is too broad. Subsequent to the District Court's decision in Houston Seed the Fifth Circuit Court of Appeals adopted a narrower construction. A proof of claim is a consent to summary jurisdiction over compulsory counterclaims. However, it does not act as a consent to permissive counterclaims. Gill v. Phillips, 337 F.2d 258, 264 (5th Cir. 1964). Stripped of dicta this is also the holding of Houston Seed wherein the trustee asserted a permissive counterclaim.