MERLE NICOLA, TRUSTEE IN BANKRUPTCY OF
INTERSTATE MACHINERY & SUPPLY COMPANY,
BANKRUPT, APPELLEE, V.
E. O. PETERS, INC., APPELLANT.

303 N.W.2d 771

Filed March 27, 1981.   No. 43261.

J. L. Krause for appellant.

Michael G. Helms of Schmid, Ford, Mooney & Frederick for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ.

BOSLAUGH, J.

This case arises out of a controversy concerning a construction crane leased to the defendant, E. O. Peters, Inc., by Interstate Machinery & Supply Company. The written lease agreement provided for a rental of $5,000 per month. The lease was entered into on July 29, 1977, while Interstate was in reorganization proceedings under Chapter XI of the Bankruptcy Act.

On October 26, 1977, Interstate was adjudicated a bankrupt in involuntary proceedings and Merle Nicola,

the plaintiff, was appointed as trustee. In April of 1978 the trustee commenced summary proceedings in the bankruptcy court to recover possession of the crane. On September 29, 1978, the bankruptcy court issued a turnover order and the trustee took possession of the crane on October 11, 1978.

The lease terminated by operation of law on April 26, 1978, under Bankr. Act § 70 (b) and Rule 607, 11 U.S.C. § 110 (b) (1976), because the lease was not specifically assumed by the trustee. This action was commenced on October 20, 1978, to recover the rental due under the lease to April 26, 1978, and the fair and reasonable rental value of the crane after that date. The jury returned a verdict for the plaintiff in the amount of $44,333.33 on the first cause of action, and $17,600 on the second cause of action. The defendant has appealed.

The defendant's principal contentions are that the trial court erred in failing to sustain its various motions to dismiss on the ground the action was barred by res judicata because of the earlier turnover proceeding in the bankruptcy court; in excluding evidence of the failure of the trustee to give notice to the defendant of the subsequent sale of the crane; and in permitting the trustee to sue on a lease that had been rejected.

As to the res judicata defense, the critical question is whether the issues litigated in this action could have been presented and determined in the summary proceeding in the bankruptcy court. The question is determined by the scope of the bankruptcy court's jurisdiction in the turnover proceeding.

In the turnover proceeding, the trustee sought only the return of the property which was properly a part of the bankrupt's estate. Prior to October 1, 1979, before the 1978 Bankruptcy Act took effect, the bankruptcy court had summary jurisdiction over controversies with respect to property passing to the trustee under the act when the property was within the actual or constructive possession of the bankruptcy court or when the adverse claimant to the property consented to juris-

diction. *In re Warren*, 387 F. Supp. 1395 (S.D. Ohio 1975). Although the bankruptcy court had summary jurisdiction to adjudicate title to a cause of action, for example, it did not, absent consent, have summary jurisdiction to enforce the chose in action against the party liable thereon. *Id.* at 1400. Thus, the bankruptcy court could take summary jurisdiction to determine the title and right to possession of the crane if the court determined it had constructive possession of the property. This the court did when it determined that the defendant's claim to the crane was colorable only.

An adversary proceeding to determine the amount the defendant owed the trustee under the lease would necessarily involve the plenary jurisdiction of a court. Summary jurisdiction could determine the issue only if the defendant consented to its exercise. The record shows the defendant resisted the summary jurisdiction of the bankruptcy court in the trustee's suit and alleged that "the sole remedy of the Trustee is a separate and independent suit in State Court against Defendant."

In the absence of a consent to summary jurisdiction by the defendant, the trustee could not get a money judgment in the summary turnover proceeding. *In re Guillotine Splicer Corp.*, 2 B.R. 306 (Bankr. Ct. E.D.N.Y. 1980). In that case the court said at 307-08: "The United States Supreme Court in *Maggio v. Zeitz*, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948), defined the parameters of the Bankruptcy Court's jurisdiction to issue a turn-over order. In *Maggio* the Court stated:

" 'In applying these grants of power, courts of bankruptcy have fashioned the summary turnover procedure as one necessary to accomplish their function of administration. It enables the court summarily to retrieve concealed and diverted assets or secreted books of account the withholding of which, pending the outcome of plenary suits, would intolerably obstruct and delay administration. When supported by "clear and convincing evidence," the turnover order has been sustained as an

appropriate and necessary step in enforcing the Bankruptcy Act. *Oriel v. Russell,* 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419; *Cooper v. Dasher,* 290 U.S. 106, 54 S.Ct. 6, 78 L.Ed. 203. See also *Farmer's & Mechanics' National Bank v. Wilkinson,* 266 U.S. 503, 45 S.Ct. 144, 69 L.Ed. 408.

"'But this procedure is one primarily to get at property rather than to get at a debtor. Without pushing the analogy too far, it may be said that the theoretical basis for this remedy is found in the common law actions to recover possession — detinue for unlawful detention of chattels and replevin for their unlawful undertaking — as distinguished from actions in trespass or trover to recover damages for the withholding or for the value of the property. Of course the modern remedy does not exactly follow any of these ancient and often overlapping procedures, but the object — possession of specific property — is the same. The order for possession may extend to proceeds of property that has been disposed of, if they are sufficiently identified as such. But it is essentially a proceeding for restitution rather than indemnification, with some characteristics of a proceeding in rem; the primary condition of relief is possession of existing chattels or their proceeds capable of being surrendered by the person ordered to do so. It is in no sense based on a cause of action for damages for tortious conduct such as embezzlement, misappropriation or improvident dissipation of assets.'

. . . .

"The trustee is actually seeking a money judgment against the defendant. However, unless the defendant consents to the jurisdiction of this Court, this Court lacks the jurisdiction to render a money judgment in this proceeding." (Emphasis omitted.)

In *In re 671 Prospect Avenue Holding Corporation,* 118 F.2d 453, 454 (2d Cir. 1941), the court stated: "The existence of liability for damages caused by breach of contract or by tort must ordinarily at least be established by plenary suit, even though the plaintiff be a

trustee in bankruptcy. . . . This court said that the trustee could summarily recover possession of such specific property of the bankrupt as was still of the appellant's land, and 'in a proper proceeding' could recover the value of such property as the appellant had carted away or converted. We think it clear that by 'a proper proceeding' was meant a plenary suit."

Since the bankruptcy court had no jurisdiction in the summary turnover proceeding to determine the amounts due the trustee from the defendant under the lease, the turnover proceeding was not a bar to this action.

The defendant's contention that the trustee was required to give notice to the defendant of the subsequent sale of the crane is based on his theory that the lease was intended as security and was within the scope of Neb. U.C.C. art. 9 (Reissue 1971). This in turn depended upon the defendant's theory that the lease contained an option for the defendant to purchase the crane.

The lease itself, which was a fully integrated agreement, contained no option to purchase. See *Burhoop v. Pegram*, 194 Neb. 606, 234 N.W.2d 828 (1975). Instruction No. 7 by the trial court to that effect was correct.

Although there had been some negotiations between the defendant and Interstate prior to the execution of the lease, the defendant had no option to purchase because the parties failed to agree upon a price. This matter was an issue in the turnover proceeding and was decided adversely to the defendant. The issue was within the jurisdiction of the bankruptcy court and the prior adjudication was binding on the defendant.

The defendant's theory that the trustee could not sue on a rejected lease was based on an incorrect view of the effect of the rejection. The lease terminated on April 26, 1978, because the trustee did not specifically assume the lease. This terminated the defendant's liability for future rent under the lease but did not affect his obligation for rent that had accrued up to the date of

termination. The lease was executory only as to rental payments becoming due after April 26, 1978. Where an agreement has been fully performed by one party and the only performance due from the other is payment, the contract is no longer "executory" as that term is used in the Bankruptcy Act. *In the Matter of Computer Utilization, Inc.*, 508 F.2d 673 (5th Cir. 1975); *In Re Forney*, 299 F.2d 503 (7th Cir. 1962); *In Re San Francisco Bay Exposition*, 50 F. Supp. 344 (N.D. Cal. 1943).

Since the defendant failed and refused to return the crane until it was recovered by the trustee on October 11, 1978, the defendant was liable for the reasonable rental value of the crane between April 26, 1978, and October 11, 1978.

We have examined the defendant's other assignments of error and find that they are without merit.

The judgment of the District Court is affirmed.

AFFIRMED.