**In the Matter of SHADA TRUCK LEASING, INC., Debtor.**

**Bankruptcy No. BK82–2155.**

United States Bankruptcy Court, D. Nebraska.

June 30, 1983.

Joseph Reedy, Omaha, Neb., for debtor.

Douglas E. Quinn, Omaha, Neb., for Trailmobile.

## MEMORANDUM

DAVID L. CRAWFORD, Bankruptcy Judge.

At issue in the matter before me is whether a seller's express warranty to repair or replace defective parts and a debtor-buyer's obligation to pay under the terms of an installment sales contract are sufficient to constitute an executory contract within the meaning of Section 365 of the Bankruptcy Code.

The facts are not in dispute. On October 28, 1980, Trailmobile, Inc., (Trailmobile) doing business under its former name Pullman Incorporated, Pullman Trailmobile Division, entered into a five-year contract with the Debtor-in-Possession, Shada Truck Leasing, Inc., (Shada). Pursuant to the "Retail Installment Sales Contract and Security Agreement", the Debtor contracted to purchase eight 1980 reefer trailers for a total contract price of $273,131.00 and Trailmobile undertook a five-year warranty obligation to repair or replace defective materials or workmanship. Timely monthly payments were made until June of 1982; since that time, Shada has been in default. The subsequent replevin action for return of the trailers was stayed by the Debtor's voluntary Chapter 11 petition filed on December 13, 1982. The instant proceeding arises from the application of Trailmobile under 11 U.S.Code § 365 to compel adoption or rejection of the installment sales contract as executory.

Trailmobile, the seller, contends the relationship between the parties can be viewed as an executory contract in that performance remains due on both sides: the Debtor, holder of untriggered warranty rights, owes the balance of payments on the contract and the Seller the fulfillment of the warranty. The Debtor takes the position that the sale of the trailers was completed and that it had become owner of the trailers subject to a security interest held by Trailmobile. Furthermore, it is Shada's contention that the continuing obligation of Trailmobile to warranty the trailers for five years is insufficient to bring the contract within the meaning of Section 365 of the Bankruptcy Code. The threshold issue is whether the contract is executory or has been so far performed that the Seller's only remedy is to file a claim against the estate.

The Bankruptcy Code does not define executory contracts but the legislative history states that the term *executory contracts* "generally include contracts on which performance remains due to some extent on both sides". [H.R. 95–595, 95th Congress, 1st Session (1977) 347; Senate Report No. 95–989, 95th Congress, 2d (1978) 58, U.S. Code Cong. & Admin.News 1978, pp. 5787, 5844, 6303.] Professor Vern Countryman's definition of executory contracts in the bankruptcy context was adopted by the Eighth Circuit in *In re Knutson,* 563 F.2d 916 (8th Cir., 1977), and more recently stated by this court in *Stahl v. G.P. Enterprises, Inc. (In re Olson Brothers Mfg. Co.)* unpublished (D.Neb.1982); *In re Frasier,* unpublished (D.Neb.1982):

A contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.

[Countryman, "Executory Contracts in Bankruptcy," 57 *Minn.L.Rev.* 439, 460 (1973). See also, *Jenson v. Continental Financial Corp.,* 591 F.2d 477, 481 (8th Cir.

1979); *Nicola v. Peters,* 208 Neb. 439, 444, 303 N.W.2d 771, 776 (1981); *Northwest Airlines, Inc. v. Klinger,* 563 F.2d 916, 917 (8th Cir.1977).

■ In essence, this definition represents an attempt to describe all contracts that benefit the estate when either assumed or rejected. [See Julis, "Classifying Rights and Interests Under the Bankruptcy Code", 55 *Am. bank, L.J.* 223, 252 (1981).] As Countryman noted,

> The concept of the executory contract in bankruptcy should be defined in light of the purpose for which the trustee is given the option to assume or reject. Similar to his general power to abandon or accept other property, this is an option to be exercised when it will benefit the estate... [and] should not extend to situations where the only effect of its exercise would be to prejudice other creditors of the estate. Countryman at 450–451.

In the instant case, rejection would be meaningless if the seller has already performed, since the estate has whatever benefit it can obtain. Rejection would neither add to nor detract from the creditor's claim or the estate's liability. Its assumption would not benefit the estate but would only transform the obligation of the debtor into a first priority expense of administration. Defaults would have to be cured, damages paid, and adequate assurance of future performance would have to be given if the contract were assumed between petition and plan. In effect, Trailmobile would receive an advantage over other lien holders, and the estate could be deprived of whatever equity exists in the property. Under the facts of this case, it is more appropriate to classify the installment sales contract between these commercial parties as merely a lien against the estate of the debtor.

The Utah Bankruptcy Court in *In re Booth,* 19 B.R. 53 (D.Utah 1982), reached a similar conclusion based upon a number of policies underlying Section 365, including not only benefit to the estate but also protection of creditors. Rather than focusing exclusively on a mutuality of commitments concept, that court looked at the status of the parties and the goals of reorganization. In *Booth,* the debtor was a debtor-in-possession under Chapter 11. The sellers had contracted to sell land to the debtor at a price of $97,200 with $1,100 down, and the balance payable over time with interest. Sellers wanted the contract deemed executory because unperformed obligations remained on both sides, *viz,* payment by debtor and delivery of title by sellers. The *Booth* court, however, classified the contract for deed as a lien rather than an executory contract, since that classification benefited the estate by enlarging the value of the estate and furthered the rehabilitation of the debtor. The vendors were thereby placed on a par with other lien holders, and forfeiture and loss of equity to the estate were prevented.

■ The case at bar can also be analyzed under Countryman's definitional approach of mutuality of performances, with the same result. The Retail Installment Sale Contract between these commercial parties cannot be deemed an executory contract. The terms of the contract granted Trailmobile a security interest in the trailers to assure payment of the purchase price. As of petition date, the debtor had a substantial obligation to continue paying on the debt. This unperformed obligation, standing alone, would not make the contract executory; it would be a mere debt claimable by the Seller under the Bankruptcy Code.

■ On the other hand, Trailmobile as seller had fulfilled its primary obligation when physical possession of the trailers was delivered to the debtor, but there remained unperformed future obligations under the terms of its five-year warranty. While this express warranty was incorporated into the entire agreement and was undoubtedly an element of the purchase price, the actual language of the warranty was limited. Trailmobile was obligated to,

> ... either replace or repair any part of the new Equipment sold hereunder which shall within five (5) years after delivery to Purchaser be returned at Purchaser's expense to any of Seller's branches or

authorized dealers and which Seller's examination discloses to his reasonable satisfaction to be defective in material or workmanship within the terms of this warranty . . .

This limitation to repair and replace defective parts left the determination of the existence of a defect in workmanship or material to the Seller. Furthermore, the warranty listed numerous exclusions. The Seller incurred no liability for parts, accessories or components which were not Seller's standard, but were specified by Purchaser for incorporation into the Equipment; for tires, refrigeration equipment, lift gates and other equipment, parts and accessories warranted to Purchaser by the manufacturer; for parts which were subject to wear and, while not defective, were usually replaced in accepted maintenance programs including, but not limited to, seals, gaskets, lamps, paint and coating, brake system components; for equipment employed in other than normal use; for equipment which had been abused, altered or improperly maintained; for equipment which was returned for inspection and repair more than ten days after the defect complained of was or should have been discovered and for equipment which was operated after the defect was discovered.

The contract also stated that the Buyer had the responsibility to

" . . . maintain the collateral in good and efficient working order, condition and repair . . . all maintenance shall be at Buyer's own expense, such expense to include, but not be limited to all repairs, replacements, parts, supplies, tools, labor and other services as shall be necessary except as may otherwise be warranted by Seller."

The limited warranty was made in lieu of all other warranties and was to be purchaser's exclusive right and remedy against the Seller with respect to the equipment. In effect, the warranty between the parties substantially reduced the number of situations in which the seller could be in breach.

The purpose of an exclusive remedy of replacement or repair is to give the seller

an opportunity to make the goods conforming while limiting the exposure to risks of direct and consequential damages. From the point of view of the buyer, the purpose of the exclusive remedy is to give him goods that conform to the contract within a reasonable time after a defective part is discovered. *Kawin v. Chrysler Corp.,* 636 S.W.2d 40, 51 n. 2 (Mo.1982). Strictly speaking, this obligation of repair or replacement applies only to the actual part which was found defective, and if the seller fails to live up to the warranty, the buyer can generally bring suit for damages against the seller.

Under the facts of the instant case, the primary issue is whether the seller's obligations under the express warranty are so substantial and material that failure to honor the warranty would constitute a material breach and thereby excuse performance by the debtor. It can often be difficult to determine when the non-debtor party has actually "fully performed" under Professor Countryman's mutuality of performance test, but a contract so nearly performed by the nonbankrupt party that failure to complete performance would not be sufficiently material to excuse performance by the debtor should not be treated as an executory contract in bankruptcy.

I, therefore, conclude that the agreement between Trailmobile and Shada was substantially performed by the seller when the trailers were physically delivered to the debtor. The continuing obligation of the seller to warrant said trailers for a limited period of time was not a material duty remaining at the time the petition was filed. The contract cannot fall within the perameters of Section 365 of the Code.

In sum, regardless of the approach used to analyze this agreement, the installment sales contract cannot be deemed executory. The limited express warranties contained in its language are too insubstantial to require that it be assumed or rejected by the trustee or debtor-in-possession. This would be unduly burdensome and would unduly add to the cost of administration of this estate. I hold that the seller merely has a lien

against property of the debtor and must be relegated to filing a claim against the estate.