**In the Matter of HEARTLINE FARMS, INC., Debtor.**

**Bankruptcy No. BK89–40303.**

United States Bankruptcy Court, D. Nebraska.

Jan. 16, 1990.

Vard R. Johnson, Omaha, Neb., for Heartline Farms, Inc.

Daniel A. Fullner, Madison, Neb., for John Daly, Personal Representative of the Agnes L. Stokes Estate, deceased, movant.

## MEMORANDUM OPINION

JOHN C. MINAHAN, Jr., Bankruptcy Judge.

The issues before the court are whether a Nebraska land contract is executory under 11 U.S.C. § 365 and whether an anti-assignment clause in the land contract is enforceable. I conclude that the anti-assignment clause is not enforceable and that the land contract is an executory contract under § 365.

## FACTS

The debtor, Heartline Farms, Inc. is an assignee of the vendee's interest under a land contract. Under 11 U.S.C. § 1225(a)(5), debtor's Chapter 12 plan proposes to pay the vendor only the fair market value of the land. The Estate of Frank and Agnes Stokes (the "Stokes Estate"), represented by its personal representative John Daly, is the vendor under the land contract. The Stokes Estate asserts that an anti-assignment clause prevented the debtor from obtaining the rights of a vendee under the contract. The Stokes Estate alternatively asserts that the land contract is an executory contract under § 365 which cannot be assumed unless defaults are cured and the unpaid balance of the contract is paid in full. See § 365(b)(1).

On March 1, 1978, Frank and Agnes Stokes signed a real estate contract agreeing to sell approximately 1,680 acres of Wheeler County real estate to Beverly Land Company. The Stokes signed a warranty deed naming Beverly Land Company as grantee, which was placed in escrow. On the same day, March 1, 1978, Beverly Land Company assigned its interest under

the land contract to Charles W. Raymond. Frank and Agnes Stokes consented to the assignment, accepted Mr. Raymond as a substituted vendee, and released Beverly Land Company from all obligations on the contract. The Stokes signed a warranty deed naming Charles W. Raymond as grantee and the deed was delivered to the escrow agent. The warranty deed to Beverly Land Company was destroyed at the instructions of the Stokes.

On February 3, 1981, Mr. Raymond assigned his interest in all the Wheeler County property. The property was divided into three tracts and Mr. Raymond assigned a tract to Arkoosh & Zidan, Inc., to Ida–Gro, Inc. and to F.F. Gunning (the "Three Assignees"). Under the terms of three separate assignment agreements each of the assignees made a down payment and agreed to make annual payments to Mr. Raymond, who remained liable to the Stokes on the contract. The payments from the Three Assignees were to be made to a new escrow agent. Frank and Agnes Stokes were parties to the assignment agreement and they specifically consented to the assignment by Mr. Raymond. Further, the assignment agreement allowed further assignments between Arkoosh & Zidan, Inc., Ida–Gro, Inc. and F.F. Gunning *inter se* without the consent of the Stokes. However, the assignment agreements specifically provided that:

> Arkoosh & Zidan, Inc., F.F. Gunning, and/or Ida–Gro, Inc. may not assign or sell whatever interest they may claim, individually or collectively, in the Real Estate without the prior written approval of the Stokes', such approval and consent not to be unreasonably withheld.

New warranty deeds were signed to evidence the assignments. Frank and Agnes Stokes executed warranty deeds naming Mr. Raymond as grantee. Mr. Raymond and his wife executed warranty deeds naming F.F. Gunning, Arkoosh & Zidan, Inc., and Ida–Gro, Inc. as grantees. The warranty deed from the Stokes to Mr. Raymond, and the warranty deeds from Mr. Raymond and his wife to Arkoosh & Zidan, Inc., Ida–Gro, Inc., and F.F. Gunning were deposited with the new escrow agent.

On March 1, 1981, Arkoosh & Zidan, Inc. assigned all of its interest in the property to F.F. Gunning, Inc., and executed a warranty deed naming F.F. Gunning, Inc. as grantee. The assignment agreement and warranty deed were placed in escrow. On the same day, Ida–Gro, Inc. assigned all of its interest in the property to F.F. Gunning, Inc., and executed a warranty deed naming F.F. Gunning, Inc., as grantee. The assignment agreement and warranty deed were placed in escrow.

In October of 1984, F.F. Gunning experienced financial difficulties which affected his ability to perform under the February 3, 1981 assignment agreements with Mr. Raymond. F.F. Gunning and F.F. Gunning, Inc. entered into an agreement with Mr. Raymond and his wife wherein F.F. Gunning and F.F. Gunning, Inc. were to sell their interest in the real estate to Mr. and Mrs. Raymond. The Stokes refused to consent to the sale to Mr. and Mrs. Raymond. Despite the Stokes' refusal, F.F. Gunning and F.F. Gunning, Inc. executed and delivered deeds to the real estate to Mr. and Mrs. Raymond on or about November 2, 1984. Although the deeds were not deposited with the escrow agent, they were duly recorded of public record.

On October 13, 1987, Mr. and Mrs. Raymond conveyed the real estate by warranty deed to the debtor, Heartline Farms, Inc. The Stokes did not consent to the conveyance to the debtor. The deed from Mr. and Mrs. Raymond to the debtor was not deposited with the escrow agent, but the deed was duly recorded of public record.

After the deeds were executed by F.F. Gunning and F.F. Gunning, Inc. to Mr. and Mrs. Raymond in 1984, Mr. Raymond paid to the escrow agent the annual installment payments due under the contract for 1985 through 1987. Mr. Raymond's financial condition deteriorated in 1988, and Mr. Raymond defaulted on the annual installments due under the original land contract.

A settlement agreement was subsequently entered into between Mr. Raymond and the Stokes. The settlement agreement recognized Mr. Raymond as the buyer of the

real estate and provided that the Stokes would delay foreclosure proceedings and give Mr. Raymond until October 16, 1987 to pay $275,000.00 to the Stokes. Mr. Raymond did not pay the $275,000.00, and the Stokes Estate commenced foreclosure proceedings against Mr. Raymond on September 1, 1988.

Mr. Raymond filed Chapter 12 bankruptcy on December 16, 1988. The Stokes Estate filed a proof of claim in Mr. Raymond's bankruptcy case in the amount of $310,740.66 principal and $22,466.97 interest.

The debtor, Heartline Farms, Inc. subsequently filed this Chapter 12 bankruptcy on March 16, 1989. Debtor's plan values the real estate at $144,000.00. Attached to the plan as an exhibit is an appraisal of the property completed on February 20, 1989, which values the real estate at $150,000.00. Debtor's schedules indicate that the total outstanding debt on the property is approximately $361,639.30. The debtor does not currently have any equity in the property.

## DISCUSSION

The first issue is whether the debtor, Heartline Farms, Inc. has any interest, as vendee or otherwise, under the March 1, 1978 land contract. The Stokes Estate argues that the assignment of the land contract to the debtor is invalid because the Stokes' consent was a condition precedent to a valid assignment and the Stokes consent was not obtained. The Stokes Estate asserts that although the March 1, 1978 land contract did not contain an anti-assignment provision, the February 3, 1981 assignments to Arkoosh & Zidan, Inc., Ida–Gro, Inc. and F.F. Gunning required the Stokes' consent before an assignment occurred. The Stokes did not consent to the assignments from F.F. Gunning, Inc. to Mr. Raymond or the assignment from Mr. Raymond to the debtor, Heartline Farms, Inc.

The second issue before the court is whether the land contract is an executory contract under Bankruptcy Code § 365. Under § 365, an executory contract may not be assumed unless the debtor cures

existing defaults and provides assurance of future performance. In effect, § 365 requires payment of the entire balance of the land sale contract under the Chapter 12 plan. If, on the other hand, the contract is not executory under § 365, the debtor may retain the land and pay only the present value of the land under § 1225.

### Anti–Assignment Clause

■ In Nebraska a vendor cannot enforce a contractual prohibition on the assignment of a land contract if the vendee's assignee is willing and able to perform or if the security provided by the land contract is not impaired. *See Martin v. Baxter,* 198 Neb. 640, 254 N.W.2d 420 (1987); *Beren Corp. v. Spader,* 198 Neb. 677, 255 N.W.2d 247 (1977); *Riffey v. Schulke,* 193 Neb. 317, 227 N.W.2d 4 (1975); *Wagner v. Cheney,* 16 Neb. 202, 20 N.W. 222 (1884). The assignment from F.F. Gunning, Inc. to Mr. Raymond did not impair the security of the vendors, Frank and Agnes Stokes. The Stokes continued to have recourse against the land, and against Mr. Raymond and the Three Assignees. The assignments to Mr. Raymond were therefore valid and Mr. Raymond transferred his interest to the debtor, Heartline Farms.

### Executory Contract

■ The Eighth Circuit Court of Appeals has adopted the following definition of an executory contract under § 365:

A contract under which the obligations of both the bankrupt and the other party are so far unperformed that the failure of either party to complete performance would constitute a material breach excusing the performance of the other.

*See In re Knutson,* 563 F.2d 916, 917 (8th Cir.1977) (quoting Countryman, *Executory Contracts in Bankruptcy: Part I,* 57 Minn.L.Rev. 439, 450 (1973)). A bankruptcy court must look to state law to determine whether the contract is executory within the meaning of § 365. *See In re Speck,* 798 F.2d 279 (8th Cir.1986); *Matter of Shada Truck Leasing, Inc.,* 31 B.R. 97 (Bkrtcy.D.Neb.1983). *See generally,* Countryman, *Executory Contracts in Bankruptcy: Part II,* 58 Minn.L.Rev. 749 (1974).

The question to be determined under state law is whether the obligations of both vendor and vendee under the land contract are so far unperformed that the failure of either party to complete performance would constitute a material breach excusing the performance of the other. In some states a vendee's default in payment excuses the vendor's obligation to convey legal title and the land contract forfeiture provisions are enforced. In other states a vendee's default in payment does not excuse the vendor's obligation to complete performance. These states treat land contracts as a security device similar to a mortgage and the rights and remedies afforded to the vendor and vendee are similar to those afforded to a mortgagor and mortgagee. This dichotomy is controlling under § 365.

In a mortgage transaction the seller transfers title to the purchaser at the time of sale, the purchaser signs a promissory note for the unpaid purchase price, and the purchaser, as mortgagor, grants a mortgage lien on the property sold to the seller-mortgagee. Upon default, the mortgagor's interest in the property is protected by common law and statutory rights of redemption. If the defaulting mortgagor files bankruptcy, it is clear that there is no basis to assert that the legal arrangement between the mortgagor and mortgagee is an executory contract. The contract of sale merged with the deed and the relationship of seller and purchaser became that of debtor and creditor at the time of sale. In a bankruptcy case the creditor-mortgagee is not entitled to the extraordinary protection afforded by § 365. A mortgage is evidence of a completed, non-executory contract of sale. *See Matter of North American Dealer Group, Inc.,* 16 B.R. 996, 1000 (Bkrtcy.E.D.N.Y.1982). *See also In re Faiman,* 70 B.R. 74, 75–77 (Bkrtcy.D.N.D. 1987); *In re Bertelsen,* 65 B.R. 654 (Bkrtcy.C.D.Ill.1986).

In a land contract transaction, state law varies on whether the vendee's default in payment excuses the vendor's obligation to convey title. In some states, the right of the vendor to receive payment and the right of the vendee to receive merchantable title are regarded as dependent covenants. Failure of either party to perform constitutes a material breach excusing performance by the other. In such states, the vendee's interest in the property is forfeited upon default and the vendee's right to redemption, if any, is generally limited. In states adopting this approach, land contracts should be regarded as executory contracts under § 365 because failure of vendee to make payments will excuse the vendor's obligation to transfer title. This is illustrated by recent bankruptcy cases from Iowa and South Dakota. *See Brown v. First Nat'l Bank in Lenox,* 844 F.2d 580 (8th Cir.1988), *cert. dismissed,* 487 U.S. 1260, 109 S.Ct. 20, 101 L.Ed.2d 971; *In re Speck,* 798 F.2d at 280. In *In re Speck,* the eighth circuit recognized that under South Dakota law the right of the vendor to receive payment and the right of the vendee to take merchantable title upon completion of payments are dependent covenants. Failure of either party to perform would constitute a material breach excusing performance of the other under South Dakota law. *In re Speck,* 798 F.2d at 280. Similarly, in *Brown,* the eighth circuit held that "contracts for deed in Iowa, as in South Dakota, are executory contracts, rather than liens, for purposes of the Bankruptcy Code." *Brown,* 844 F.2d at 581.

In other states the formal terms of the land contract are not permitted to obscure the substance of the underlying sale transaction. The vendee's equity is protected by statute or decisional law which extends to the defaulting vendee rights and remedies similar to those extended to a defaulting mortgagor. Decisional law has taken a variety of approaches to protect the vendee's equity. These approaches include granting the vendee the right to judicial foreclosure of the land contract, recognizing the vendee's equity of redemption, allowing restitution to the vendee of payments made in excess of the vendor's damages, and finding that the vendor has waived strict performance of the contract terms. *See* Note, *Installment Land Contracts: Remedies in Nebraska,* 60 Neb.L. Rev. 750, 776 (1981). If the defaulting

vendee has equity in the property, these states treat the vendee as one who has already purchased the property. In such states, a vendee who has substantial equity in the property is considered to have purchased the property, the vendor is considered to have sold the property, and the land contract is treated as a security device. *See* Countryman, *Executory Contracts in Bankruptcy: Part I,* 57 Minn.L. Rev. 439, 472 (1973); Note, *Bankruptcy and the Land Sale Contract,* 23 Case W.Res.L.Rev. 393, 405–07 (1972). In effect, the vendor is regarded as holding a lien or security interest to secure the unpaid purchase price. Upon default, the vendor must foreclose the land contract in a manner similar to a mortgage and the vendee is generally given the right to redeem the property. Default does not cause a forfeiture of equity. Nebraska, unlike South Dakota and Iowa, has adopted this more equitable view of land contracts. In states like Nebraska, a land contract should not be regarded as an executory contract under a § 365 if the vendee has equity. A land contract treated as a security device similar to a mortgage does not qualify as an executory contract under § 365. *See e.g., In re Streets & Beard Farm Partnership,* 882 F.2d 233 (7th Cir. 1989); *In re Faiman,* 70 B.R. at 75–77; *In re Adolphsen,* 38 B.R. 776 (Bktrcy.D.Minn. 1983). *Cf. Jenson v. Continential Financial Corp.,* 591 F.2d 477 (8th Cir.1979) (Bankruptcy Act case holding that a security agreement is not an executory contract); *In re Pacific Express, Inc.,* 780 F.2d 1482 (9th Cir.1986) (security agreement is not an executory contract).

In summary, if state law permits a forfeiture of the vendee's interest, the land contract is properly regarded as an executory contract because under state law the vendor's obligation to convey title is fully excused by the vendee's default. If, on the other hand, state law protects the equity of the defaulting vendee by treating the vendee as a purchaser, the contract should not be considered an executory contract because the vendee is treated as a purchaser and the vendor's obligation to convey title is not excused upon the vendee's default. This approach to determine whether a land contract is executory under § 365 does not alter the basic rights of vendor and vendee as determined under state law. If the vendee has no equity in the land, under state law the vendor is permitted to retain the land and to eliminate the vendee's interest by strict foreclosure. In a bankruptcy case since the vendee has no equity and Nebraska would permit strict foreclosure, the land contract would be treated as an executory contract under § 365. Under that section the vendor is entitled to be paid the contract price and to have defaults cured as a condition to assumption. If the vendee cannot satisfy these conditions, the vendor may be entitled to relief from the automatic stay imposed by § 362 in order to pursue strict foreclosure under Nebraska law. On the other hand, if the vendee has substantial equity in the property, the vendor is treated as a secured creditor under both state law and bankruptcy law. Since there is equity in the property and Nebraska law would require the land contract to be foreclosed as a mortgage, the land contract is not an executory contract under § 365. Thus, in bankruptcy the vendor is treated as any secured creditor and is entitled to be paid the present value of collateral. That is essentially the same position that the vendor occupies under state law. Since the treatment of vendor and vendee is similar whether or not a bankruptcy case is pending, the classification of a particular land contract as executory or non-executory does not provide an extraordinary incentive or deterrent for filing bankruptcy.

■■■ Whether the land contract in the instant case is an executory contract under § 365 depends on the rights and remedies afforded to land contract vendors and vendees under Nebraska law. Under Nebraska law, land sale contracts in which the vendee has substantial equity are treated as mortgages. *See Buford v. Dahlke,* 158 Neb. 39, 62 N.W.2d 252 (1954); *Hendrix v. Barker,* 49 Neb. 369, 68 N.W. 531 (1886). The interest held by a vendor is considered personal property. Legal title is retained by the vendor as security for payment.

*See Ehlers v. Vinal,* 382 F.2d 58 (8th Cir. 1967). If the vendee has substantial equity, Nebraska law requires foreclosure of the land contract in the same manner as foreclosure of a mortgage. The interest of the vendee is thus protected by a statutory right to stay the foreclosure sale and the vendee has a right of redemption. *See* Neb.Rev.Stat. §§ 25–1506, 25–1530 (1985). Strict foreclosure is available only if the vendee does not have substantial equity in the property and strict foreclosure would not offend justice and equity. *See Riffey v. Schulke,* 193 Neb. at 317, 227 N.W.2d at 6; *Morgan v. Zoucha,* 203 Neb. 119, 277 N.W.2d 564 (1979); *Corn Belt Products Co. v. Mullins,* 172 Neb. 561, 110 N.W.2d 845 (1961). Under Nebraska law if the vendee has substantial equity, the nonperformance of either the vendee or the vendor will not excuse performance by the other party. If the vendee defaults, as previously discussed the vendee is treated as one who has purchased the property and the vendor as one who has already sold the property. If the vendor defaults, the land contract is still treated as a sale under state law and the vendee has the right to seek specific performance. In such a case, the land contract would have become nonexecutory upon the accrual of substantial equity in the property. Nonperformance by the vendor after substantial equity has accrued will not void the prior recognition under state law that a sale has already occurred. Further, the fact that title remains to be conveyed is not controlling. This act, like signing a deed or returning a promissory note upon satisfaction of a debt, is not an act sufficient to render a land contract unperformed. The delivery of documents is a mere formality which does not involve the type of significant legal obligation that would render a contract unperformed. *Cf. In re Streets & Beard Farm Partnership,* 882 F.2d at 235; *Matter of Shada Truck Leasing, Inc.,* 31 B.R. at 99.

Nebraska case law does not establish criteria to follow in determining whether substantial equity exists in a particular case. However, a review of Nebraska decisional law reveals that strict foreclosure has been allowed not only where there is no equity in property, but also where a purchaser has paid approximately 11% of the contract price. *See Swanson v. Madsen,* 145 Neb. 815, 18 N.W.2d 217 (1945) (vendee has no equity where a debt of $38,000.00 is compared to the property valued at $24,-000.00); *Morgan v. Zoucha,* 203 Neb. at 122, 277 N.W.2d at 565–66 (equity of $1559.68 as compared to a purchase price of $13,500.00 is not substantial equity). *But see Ruhl v. Johnson,* 154 Neb. 810, 49 N.W.2d 687 (1951) (equity of $16,000.00 as compared to a purchase price of $38,000.00 is substantial equity).

I hold that a Nebraska land contract is an executory contract under § 365 if an action in strict foreclosure can be maintained under Nebraska law. The land contract is not an executory contract if the contract must be foreclosed as a mortgage under Nebraska law. A land contract treated as a security device similar to a mortgage does not qualify as an executory contract under § 365.

In the present case, the land contract is an executory contract for purposes of § 365. The vendee, Heartline Farms, Inc. has no equity in the property subject to the land contract. Debtor's plan values the property at $144,000.00, and an appraisal attached to the plan values the property at $150,000.00. The outstanding debt on the property is well over $360,000.00. Further, I conclude that strict foreclosure would not offend justice and equity under Nebraska law. Thus, under Nebraska law, the vendor, Stokes Estate would be entitled to strictly foreclose the contract. *See Riffey v. Schulke,* 193 Neb. at 317, 227 N.W.2d at 6; *Morgan v. Zoucha,* 203 Neb. at 122, 277 N.W.2d at 565–66; *Corn Belt Products v. Mullins,* 172 Neb. at 570, 110 N.W.2d at 851. As an action in strict foreclosure is available to the vendor, the failure of either party to perform constitutes a material breach excusing performance of the other. Therefore, the land contract in this case is an executory contract for purposes of § 365. Accordingly, the Stokes Estate is entitled to the treatment required under that section.

A separate order will be entered consistent herewith.